CARTER, Judge.
This is a personal injury suit resulting from a battery inflicted by defendant, C.A. (Red) Stark, on plaintiff, Frank DiBenedet-to. Plaintiff appeals seeking an increase in the amount of damages awarded in his favor by the trial court.
FACTS
The incident occurred on June 30,1979, at a meeting of the Louisiana Auto & Truck Used Parts Association at a motel in Lafayette, Louisiana. There was conflicting testimony from numerous witnesses as to the events occurring shortly before the incident. There apparently were two factions at the meeting, one which favored the admission to the meeting of a former employee of the Association, Mr. Bullock, and one which wanted the former employee excluded from the meeting. Members of the Board of Directors were discussing this issue before the meeting began in the breeze way just outside the motel and had decided not to admit Mr. Bullock. Mr. DiBenedetto joined the discussion and voiced his opinion that Mr. Bullock should be admitted as his guest. Mr. Stark left the discussion and went inside the motel. Mr. DiBenedetto followed soon after. As Mr. DiBenedetto was walking down the hallway, he was struck by the defendant, knocked to the floor, and then kicked. It is for damages received in this attack that he filed suit.
Witnesses for the defendant testified primarily with regard to the discussion among the members of the Board of Directors that occurred outside the motel in the breezeway a few minutes prior to the incident. When Mr. DiBenedetto joined the group, the discussion became heated because he disagreed with the members of the Board over the decision to deny Bullock admittance to the meeting. Mr. Stark was a member of the Board and was present at the discussion. DiBenedetto shook his finger in their faces, cursed them, accused the members of the Board of being cutthroats, and called them “motherfuckers”. His manner was threatening, and several witnesses stated that he was looking for trouble.
Witnesses to the actual attack, which occurred shortly after the discussion outside, generally agreed that soon after Mr. DiBen-edetto entered the hallway, he was approached from behind and taken by surprise by the blow from Stark. Though Stark denies kicking the plaintiff while he was on the floor, the damages suffered by plaintiff indicate there was a kick to the head, and the testimony of the most impartial witness, an employee of the motel, was that Stark deliberately kicked DiBenedetto in the head.
Plaintiff sued Stark and Louisiana Auto & Truck Used Parts Association for damages, alleging that at the time of the attack, Stark was a member of the Association and that his acts were encouraged and condoned by the Association. Defendants answered and reconvened for various damages.
TRIAL COURT
The trial court rendered judgment in favor of plaintiff and against Stark in the amount of Two Thousand Eight Hundred Four and 03/100 ($2,804.03) Dollars with legal interest from date of judicial demand. This amount represents special damages in the amount of $1,804.03 and general damages in the amount of $1,000.00. The trial court dismissed the suit against Louisiana Auto & Truck Used Parts Association and found for the plaintiff and against the defendants on defendants’ reconventional demand.
The trial judge found that there was not sufficient provocation by the plaintiff to excuse the battery, but that damages should be mitigated because of plaintiffs conduct.
SPECIFICATIONS OF ERROR
1. The trial court erred in applying the doctrine of mitigation of damages to the case at bar.
*866 2. Assuming arguendo that the doctrine of mitigation of damages was applicable to the case at bar, the court improperly mitigated the damages and the award should be substantially increased.
SPECIFICATION OF ERROR NO. 1
Appellant contends primarily that mitigation was improper because he did nothing at the time of the assault to provoke the defendant. Appellant argues that even assuming he had used profanity and called some names in the discussion with members of the Board of Directors outside in the breezeway, that mitigation of damages should not apply because the event occurred prior to the attack by Stark. He contends that the discussion was over and that both he and defendant had left the scene, so that what occurred outside should not be used to lessen Stark’s liability. However, only a few minutes had passed between the discussion outside and the attack inside. The trial judge found that the situation was tense and the evidence shows that plaintiff’s words and actions contributed to that situation. There is some evidence that plaintiff continued to criticize the members of the Board after he came inside.
Mere words, even though designed to excite or irritate, cannot excuse a battery. Morneau v. American Oil Company, 272 So.2d 313 (La.1973). However, words which are calculated to provoke and arouse to the point of physical retaliation may mitigate damages in a civil action. Morneau v. American Oil Company, supra. When and how damages are mitigated are determinations which are within the discretion of the trier of fact. Holden v. Straughn, 376 So.2d 1292 (La.App. 2d Cir.1979). This rule is in keeping with the much discretion given to the trial judge in the determination of damage awards provided for in LSA-C.C. art. 1934(3) and in the jurisprudence. An appellate court, therefore, may not disturb a damage award that has been mitigated because of provocation by the trial court unless the record clearly reveals that the trial court abused its discretion in reducing the award. Holden v. Straughn, supra. The trial judge obviously felt that appellant’s words and actions in the outside discussion helped provoke the personal attack. We note, also, the case of Posey v. Fabre, 369 So.2d 237 (La.App. 4th Cir.1979), writ denied, 371 So.2d 1344 (La.1979), in which the court found that the word “motherfucker” was among “words which are calculated to provoke and arouse to the point of physical relation.” Testimony of several witnesses revealed that DiBenedetto had directed this particular epithet at the members of the Board. Though some of the testimony is contradictory, we cannot say from the record that the trial judge was clearly wrong in mitigating the damages.
SPECIFICATION OF ERROR NO. 2
Appellant further argues that even in mitigating the damages, the award should be substantially increased. In addition to the proven special damages, $1,804.03, the trial judge awarded plaintiff $1,000 in general damages. The court found that plaintiff’s conduct required the damages to be mitigated but did not indicate what the award would have been if there had been no mitigation.
Dr. Aaron Roy, an ear, nose and throat specialist, performed surgery on Mr. DiBen-edetto. He performed an open reduction, internal fixation. This amounts to making incisions over the site of the fracture, reducing the fracture, and then stabilizing the fracture by wiring the fragments of the fracture together. He said the floor of the orbit on the side of the face of the injury was damaged and there was fatty tissue trapped in the fracture site. He said that DiBenedetto has two fracture sites that still contain the wire sutures.
Dr. Roy testified that all fractures of the face are painful and that usually there is an abnormally large amount of swelling. He said that normally a man would be unable to work after surgery for 8-10 weeks and should be closely confined for a week to ten days. A man could work in a supervisory capacity in 10 days to 2 weeks. He testified that there is some residual cosmetic effect. *867 There will usually be a flattening or depression on the injured cheek. He did not recommend further surgery.
He said further that the patient will complain of pain and discomfort for two to three weeks after surgery and that the biggest complaint is that of numbness over the cheek which is long term.
Other witnesses testified to DiBenedet-to’s condition the night of the attack. He was in a semi-conscious state, his face was swollen, and he was in a lot of pain.
DiBenedetto testified that on the night of the accident he had four stitches in his ear in the emergency room of a hospital in Lafayette and had x-rays taken. He was in a lot of pain and very groggy. He then went that night on to Baton Rouge to the emergency room at Our Lady of the Lake Hospital. He saw Dr. Roy on July 2, 1979 and was operated on on July 6, 1979. Before the surgery, he was dizzy, in pain, and had tears continually dropping from his right eye.
In the assessment of damages, much discretion is left to the trier of fact, and before an award will be disturbed, the record must clearly reveal that there was an abuse of discretion. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
The Louisiana Supreme Court in the Coco case quoted from two earlier cases excerpts which should aid appellate courts in determining what constitutes an acceptable quantum within the framework of “much discretion”. The court quoted at page 334,
“ ‘Unless the record demonstrates that the trial court abused the “much discretion” provided for in fixing damages (C.C.1934), the appellate court should not disturb the award.... The question is not whether a different award might have been more appropriate, but whether the award of the trial court can be reasonably supported by the evidence and justifiable inferences from the evidence before it. That such evidence might also support a greater (or smaller) award will not justify a change in the amount by the appellate court.’ Bitoun v. Landry, [302 So.2d 278 (La.1974)] supra at 279.
‘A reviewing court might well disagree with the amount of the award fixed by the jury, but it is not entitled to substitute its opinion for that of the trier of fact.’ Spillers v. Montgomery Ward & Company Inc., [294 So.2d 803 (La.1974) ] supra at 890.”
The trial judge heard all of the testimony and considered all of the evidence. We cannot say that his evaluation of the damages was clearly wrong.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.