515 So.2d 480 (1987)
Christine Price LAUGHLIN
v.
Craig BREAUX.
No. 86CA1085.
Court of Appeal of Louisiana, First Circuit.
October 14, 1987.
*481 Kim A. Gandy, New Orleans, for plaintiff and appelleeChristine Laughlin.
William H. Dunckelman, Houma, for defendant and appellantCraig Breaux.
Before GROVER L. COVINGTON, C.J., and SAVOIE and LeBLANC, JJ.
SAVOIE, Judge.
This case is a tort action filed by Christine Price Laughlin (Plaintiff) against Craig Breaux (Defendant). Plaintiff sought to recover damages from Defendant, her former boyfriend, for his alleged physical and verbal abuse of Plaintiff.
Trial was held on January 6, 7, and 8, 1986. The jury rendered a verdict in favor of Plaintiff, awarding her $10,000 for past and future medical expenses, $40,000 for physical pain and suffering, and $100,000 for mental anguish. Pursuant to Defendant's motion for remittitur, the judge reduced the jury's award to $57,297, of which $50,000 represents general damages and $7,297 represents medical expenses. Defendant has appealed this judgment and Plaintiff has answered the appeal.
Defendant has raised two assignments of error: (1) the trial court erred in allowing the jury to hear testimony concerning certain incidents of alleged abuse which the judge later ruled were prescribed; and (2) the trial court erred in awarding the Plaintiff damages, and the damages award was excessive. The Plaintiff has answered the appeal, raising as error the trial court's ruling that certain incidents of alleged abuse were prescribed, the trial court's granting a remittitur, and the trial court's assessment of costs and award of expert witness fees.

PRESCRIPTION
In Plaintiff's petition, filed on March 28, 1985, she alleged that Defendant had beaten, raped, or verbally abused her on the following dates: December 23, 1982; Mardi *482 Gras, 1983; Summer, 1983; November, 1983; Mardi Gras, 1984; June 2, 1984; June 9, 1984; June 16, 1984; August 25 and 28, 1984; September 16, 1984; December 7, 1984; and February 27, 1985. Plaintiff further alleged that the list of dates was not exclusive. Defendant filed a peremptory exception of prescription as to all incidents ocurring one year prior to suit being filed under LSA-C.C. art. 3492. After a hearing, the court dismissed the exception "subject to the matter being brought before the court at the time of trial."
At trial, after Plaintiff and Defendant presented their evidence, Defendant reurged the exception of prescription. The trial judge sustained the exception. The judge instructed the jury in his charge that "the claim for damages in this suit, should damages be awarded, can be assessed only for the injuries occurring within one year of the filing of this suit. This action was filed by Plaintiff on March 28, 1985. Therefore, the appropriate time period commences March 28, 1984. Not before." During deliberations, the trial judge received this question from the foreperson of the jury: "Can we please have dates and incidents which allegedly occurred between March 28, 1984 and March, 1985?" The court, after hearing argument from both counsel, denied the foreperson's request. Attorneys for both Plaintiff and Defendant suggested this course of action.
Plaintiff contends the doctrine of contra non valentum is applicable to those incidents occurring prior to March 28, 1984. Because Plaintiff was suffering from Battered Woman's Syndrome, she contends she was unable to file suit. Plaintiff's treating psychologist, Dr. Clarence Bergeron, testified that Plaintiff possessed the characteristics of Battered Woman's Syndrome, one of which is learned helplessness. Learned helplessness was explained as "once one receives a great amount of punishment, they [sic] tend to stop responding. What that means clinically would be passivity, a minor amount of depression, or inability to do things for oneself [sic], or expectancy that others would do things for her." Plaintiff contends that this learned helplessness prevented her from filing suit. We find that this symptom is not, of itself, sufficient to interrupt prescription under contra non valentum.
The doctrine of contra non valentum is applicable when a defendant's tortious conduct produces a mental and physical incapacity in a plaintiff, rendering him unable to file suit; during the time of the incapacity, prescription does not run. Corsey v. State Department of Corrections, 375 So.2d 1319 (La.1979). The evidence in the case before us shows that Defendant's conduct did not produce such an incapacity in Plaintiff that she was unable to file suit.
As pointed out by the trial judge in his oral reasons given when he sustained Defendant's exception of prescription, during the time of the alleged abuse, the testimony showed that Plaintiff was running her own business; that Plaintiff had discussed the situation with Defendant with various friends; that Plaintiff had called the police based on an altercation she had had with Defendant; that Plaintiff saw a psychologist on April 12, 1984, in order to deal with Defendant; that Plaintiff called a counselor at the YMCA to seek advise about Defendant on March 13, 1984. Furthermore, Plaintiff was not living with Defendant, nor was she married to him, circumstances which may have caused her to refrain from taking any legal action.
Nor do we find any merit to Plaintiff's contentions that Defendant's actions constituted a continuing tort. The principle of a continuing tort only applies when continuous conduct causes continuing damages. South Central Bell Telephone Co. v. Texaco Inc., 418 So.2d 531 (La.1982) In this action each incident of battery and of assault is separate, and gives rise to a separate cause of action. See Bouton v. Allstate Insurance Co., 491 So.2d 56 (La. App. 1st Cir.1986). Thus, the conduct of Defendant is not continuous. Prescription runs from the date damages are sustained; damages are sustained from the date the injury is inflicted if they are immediately apparent to the victim, even though the extent of the damages may not be known. *483 Home Insurance Co. v. Highway Insurance Underwriters, 52 So.2d 449 (La.App. 1st Cir.1951). In this action, Plaintiff testified as to several different incidents of abuse by Defendant. After the abuse, she was physically bruised and sore, and emotionally upset. These injuries were immediately apparent. Prescription runs from this time, even though several different incidents of abuse may have combined to produce Plaintiff's Battered Woman's Syndrome. For these reasons, we find that the trial judge was correct in ruling that Plaintiff's cause of action for any incidents occurring prior to March 28, 1984 had prescribed.
We must now examine whether it was error for the jury to hear evidence dealing with those incidents of abuse occurring prior to March 28, 1984.
Most of the testimony of Plaintiff's witnesses concerned incidents prior to March 28, 1984. Janice Cates, Plaintiff's friend, testified that Defendant verbally abused Plaintiff at the Houma Bowl in the summer of 1983 and grabbed Plaintiff's arm on that occasion. Ms. Cates also testified to a similar incident at the bar Yesterday's in the fall of 1983. Nancy Ledet, a neighbor of Plaintiff's, testified that Plaintiff told her about an incident in December, 1983, when Defendant allegedly raped Plaintiff after a Saints game. She also testified as to an incident during Mardi Gras of 1983 where Plaintiff called the police from Ms. Ledet's house because Defendant would not leave the Plaintiff's home. Archie Eskind, another neighbor, testified that he witnessed Defendant kicking Plaintiff in her backyard while she was lying on the ground. Eskind testified that this happened in 1983. Catherine Dubois, Plaintiff's close friend, testified that Plaintiff had told her about the alleged rape which occurred after the Saints game in 1983. Janet Price, Plaintiff's mother, testified that Plaintiff related to her instances of abuse occurring in February, 1983, in December, 1983, and in December, 1982. None of these witnesses testified as to any abuse occurring after March 28, 1984. Jo Karen Nelson, coordinator of the YMCA Family Violence Program, testified that on March 13, 1984, Plaintiff called the YMCA on the phone and said she was being threatened over the phone by Defendant. Gordon Voison, a counsellor at the Terrebonne Parish Mental Health Center, as with the previous witnesses, did not testify as to any specific instances of abuse occurring after March 28, 1984. Dr. Mary Capps, a sociologist who had interviewed Plaintiff, did not testify as to abuse occurring after March 28, 1984.
Four witnesses testified concerning instances of abuse taking place after March 28, 1984: the Plaintiff; the Defendant when called under cross-examination; James Smith, Plaintiff's friend; and Dr. Clarence Bergeron, Plaintiff's psychologist. James Smith testified that he saw Plaintiff on February 28, 1985, and that she had "bruised marks on both cheeks of [sic] her eyes and she had a mark on her handa handmark on her wrist." Mr. Smith testified that when he asked Plaintiff how she became bruised, she told him that the Defendant beat her up. Plaintiff's testimony concerned a rape on December 23, 1982, some physical abuse during Mardi Gras in 1983, the verbal abuse at Houma Bowl and Yesterday's in 1983, the rape after the Saints' game in 1983, and the physical abuse during Mardi Gras, 1984. Plaintiff testified that in June 1984, Defendant pushed her around at Plaintiff's florist's shop when she refused to have sex with him. She also said that on June 16, 1984, Defendant forced her to have sex with him. She testified that after this there were other incidents where Defendant pushed her around. She described an incident on February 27, 1985 where Defendant twisted her arm behind her back, resulting in a sprained arm. Defendant when called on cross-examination was only questioned about one incident occurring after March 28, 1984. Defendant was asked whether he had beaten Plaintiff up on February 27, 1985, and he denied it. The rest of the questioning concerned earlier incidents.
Clearly from the record, the great weight of the testimony concerned prescribed incidents. Yet we find it was not error for the judge to allow evidence of these earlier *484 incidents to go before the jury. A defense to the torts of battery and assault is consent. Andrepont v. Naquin, 345 So.2d 1216 (La.App. 1st Cir.1977). In determining the amount of damages to be awarded to the victim of a battery or assault, one may consider the conduct of the plaintiff, which may mitigate the damage award. DiBenedetto v. Stark, 428 So.2d 864 (La. App. 1st Cir.1983). In order to determine whether Plaintiff's conduct constituted consent or to determine the amount of damages to which she was entitled, it was necessary for the jury to hear testimony which could offer an explanation for Plaintiff's conduct, such as the description of the Battered Woman's Syndrome. The testimony dealing with the prior abuse was necessary in order for the jury to understand and evaluate the experts' diagnosis of Battered Woman's Syndrome.
Procedurally, the judge instructed the jury that it could not award damages for the abuse prior to March 28, 1984. That the jury clearly understood this instruction is evidenced by the jury request for dates of abuse occurring after March 28, 1984. Furthermore, while Defendant on appeal contends that the jury verdict shows that the jury considered prior incidents, Defendant objected to the trial judge giving to the jury specific dates of instances of abuse that were not prescribed. It is just as likely that the jury, relying on its recollection, could have awarded a smaller amount of damages due to its inability to recall a non-prescribed incident. For these reasons, we find that Plaintiff's first assignment of error is without merit.

LIABILITY OF DEFENDANT
Defendant contends that the evidence presented by Plaintiff was not sufficient to prove Defendant committed any assaults or batteries upon her, mainly because there were no witnesses to the abuse. Defendant is correct in that the only person who witnessed the non-prescribed beatings or assaults was Plaintiff. While the Defendant admitted that he and Plaintiff had had some physical altercations, he said that he had never provoked Plaintiff. The Plaintiff, on the other hand, testified that she never provoked Defendant. Credibility determinations are the province of the trier of fact, and are not to be disturbed unless there is manifest error. Canter v. Koehring Co., 283 So.2d 716 (La.1973). The jury obviously believed Plaintiff, not Defendant, and her testimony that Defendant had committed assault and battery on her. For these reasons, Defendant's assignment of error as to finding Defendant liable for damages is without merit.

DAMAGES
The evidence shows that Plaintiff suffered a strained arm due to Defendant's abuse as well as facial bruises due to the incident on February 27, 1985. Plaintiff testified that most of the time she was not bruised and that she covered the bruises if any, with makeup or clothes. Plaintiff testified: "Most of it [physical injury] was just redness orit was bruised, butit hurt, but there was nothing on the outside because he never really rolled up his fists and punched me. You know, it was just always open-hand slaps real hard." Plaintiff testified that in addition to the battery on February 27, 1985, Defendant pushed her around in June 1984; however, she did not testify as to any injuries sustained due to this incident. She testified that Defendant raped her on June 16, 1984; again she did not testify as to any physical injury. She also testified that in September of 1984, Defendant would come to her house and ask her to cook dinner for him; if she refused or complained, he would push her around.
As to her mental pain and suffering, Plaintiff simply testified that she was going to need psychological counseling for a long time. However, Dr. Bergeron's testimony shows the psychological damage Plaintiff sustained due to Defendant's abuse. Dr. Bergeron began treating Plaintiff on April 12, 1984 and found that Plaintiff was suffering from Battered Woman's Syndrome, of which some symptoms are: passivity, unassertiveness, inability to stand up for one's self, and feelings of helplessness. Dr. Bergeron treated Plaintiff *485 through November, 1984, whereupon he put her in group therapy. She stayed in group therapy through August, 1985, and then she went to the Battered Woman's support group for assistance. Dr. Bergeron testified that Plaintiff would need psychological treatment in private care once a week for approximately two years; he testified that this would cost $60-80 per hour.
Jo Karen Nelson testified that Plaintiff had been in the Battered Woman's support group at the YMCA since October 15, 1984, and that she was still attending the group at the time of trial. Gordon Voison testified that he had been counselling Plaintiff for about four or five months, and that he was presently counselling Plaintiff at the time of trial. He testified that Plaintiff was still suffering trauma at that point. Dr. Capps testified that after reviewing Plaintiff's records and meeting with Plaintiff, that Plaintiff was suffering from Battered Woman's Syndrome. Dr. Capps testified as to the emotional problems Plaintiff was having.
A motion for remittitur is to be granted if the trial judge is of the opinion that the jury's verdict is so excessive that a new trial should be granted for that reason only. LSA-C.C.P. art. 1814. Appellate review of the trial court's action is limited to the final judgment of the trial court, reflecting the remittitur, to determine if that award is within the "much discretion" contemplated by LSA-C.C. art. 1999 (formerly LSA-C.C. art. 1934). Miller v. Chicago Insurance Co., 320 So.2d 134 (La.1975); Rougeau v. Commercial Union Insurance Co., 465 So.2d 178 (La.App. 3rd Cir.1985).
Judge Gaidry did find that the jury's award of $150,000 was excessive, and reduced that amount to $57,297. We find no abuse of discretion in reducing the award to the highest point reasonably within the discretion of the trial court as that would be the only point to which this court, on review, could reduce an award upon a finding of an abuse of discretion. Rougeau, 465 So.2d at 181. Accordingly, we affirm the trial court's judgment awarding the Plaintiff $57,297. Defendant's second assignment of error has no merit.

COSTS
Plaintiff assigns as error the court's assessment of costs half to Plaintiff and half to Defendant. Plaintiff also complains of the court's assessment of $100 as an expert witness fee for Dr. Clarence Bergeron, and the court's failure to assess a fee for Dr. Capps.
Under LSA-C.C.P. art. 1920, "[e]xcept as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable." The trial court's assessment of costs will not be disturbed unless there is an abuse of discretion. Johnson v. Hendrix Mfg. Co., Inc., 475 So.2d 103 (La.App. 2nd Cir.1985). The prevailing party is not taxed with costs unless in some way he incurred additional costs pointlessly or engaged in other conduct which justified an assessment of costs against that litigant. Johnson, 475 So.2d at 107. There is no showing in the record that Plaintiff caused costs to be incurred pointlessly or engaged in other conduct justifying the assessment of costs against her. For this reason, we find that the trial court did abuse its discretion in assessing costs against both Plaintiff and Defendant.
The trial court set an expert fee of $100 for Dr. Bergeron, but declined to set a fee for Dr. Capps. The amount of an expert witness fee is a matter within the discretion of the trial court, and will not be disturbed unless it is manifestly erroneous. Ditch v. Finkelstein, 399 So.2d 1216 (La. App. 1st Cir.1981). We find no error in awarding Dr. Bergeron $100. See Cushman v. Fireman's Fund Ins. Co., 401 So. 2d 477 (La.App. 2nd Cir.1981) and Pace v. Winn-Dixie Louisiana Inc., 339 So.2d 856 (La.App 1st Cir.1976), writ denied, 341 So. 2d 404 (La.1977).
Dr. Capps did not testify at court, but her deposition was introduced. She was accepted as an expert in sociology. Experts who testify by deposition are entitled to expert witness fees, just as are experts who testify at trial. LSA-R.S. 13:3666; Jones v. Fontenot, 341 So.2d 620 *486 (La.App. 4th Cir.1977). Accordingly, we award Dr. Capps an expert witness fee of $75, which is consistent with the trial judge's award to Dr. Bergeron. See Maturin v. Scotty Brick Co., 292 So.2d 859 (La.App. 1st Cir.), writ denied, 295 So.2d 178 (La.1974).
For the above reasons, the judgment of the trial court awarding Plaintiff $57,297 is affirmed. We reverse that portion of the trial court's judgment which cast Plaintiff for one-half of the costs, and which failed to award an expert witness fee for the testimony of Dr. Capps. Defendant is cast for all costs, and part of those costs is an assessment of $75.00 for the expert witness fee for Dr. Capps. Costs of this appeal to be assessed against Defendant.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.