565 So.2d 953 (1990)
Jimmie BAUGH, Appellee,
v.
Maurice REDMOND, et al. Defendants/Appellants.
No. 21600-CA.
Court of Appeal of Louisiana, Second Circuit.
June 20, 1990.
*954 Blackwell, Chambliss, Hobbs & Henry by Sam O. Henry, III and Kerry L. Kilpatrick, West Monroe, for defendants/appellants.
Michael A. Courteau, Monroe, for plaintiff/appellee.
Theus, Grisham, Davis by David H. Nelson, Monroe, for third-party defendant/appellee.
Before HALL, FRED W. JONES, Jr. and LINDSAY, JJ.
FRED W. JONES, Jr., Judge.
In this action for damages as the result of a battery, defendant, Maurice Redmond, appealed the judgment of the trial court in favor of plaintiff, Jimmie Baugh, and defendant's insurer, Aetna Casualty and Surety Company. Finding the trial court did not err in holding defendant liable for plaintiff's damages and in its apportionment of fault between the parties but erred in holding the insurer was not liable for the *955 intentional tort under the policy provisions, we affirm in part and reverse in part.

Issues Presented
On appeal, defendant presents the following assignments of error:
1) The trial court erred in finding plaintiff had proven by a preponderance of the evidence that defendant intended to commit a battery;
2) The trial court erred in failing to mitigate the general damage award as plaintiff's actions precipitated and provoked the incident;
3) The trial court erred in failing to acknowledge the applicability of comparative fault in an intentional tort case; and,
4) The trial court erred in finding the insurer was not liable based upon a provision excluding liability for bodily injury which was expected or intended from the standpoint of the insured.

Factual Context
On May 20, 1987 plaintiff was umpiring an adult softball game between teams from the Ouachita Parish Sheriff's Department and Ouachita Electric Service, Inc., a Redmond corporation which sponsored the team. During the game plaintiff called a Ouachita Electric Service player out for leaving a base early on a fly ball and defendant became enraged by plaintiff's call. Throughout the remainder of the game, defendant verbally harassed plaintiff and defendant's team eventually lost the game. Following the game, plaintiff and defendant had a confrontation upon exiting the field in which heated words were exchanged and eventually resulted in defendant striking plaintiff in the face. As a result of the blow, plaintiff's eyeglasses were knocked off his face and he incurred a bloody mouth with extensive damage to his teeth.
On August 21, 1987 plaintiff instituted this action for damages naming as defendants Maurice Redmond and Ouachita Electric Service, Inc. Ouachita Electric Service, Inc. was later dismissed from the litigation. In his petition, plaintiff alleged defendant had punched him in the face without provocation, knocking him to the ground, breaking his eyeglasses and causing extensive damage to plaintiff's teeth and bones in his mouth necessitating extensive dental treatment and oral surgery.
Defendant filed a third-party demand naming as third-party defendant his insurer, Aetna Casualty and Surety Company. Defendant alleged the altercation was covered by the liability provisions of the homeowner's policy issued to him by the insurer. Further the insurer was obligated to provide legal representation on the behalf of defendant. However, despite demand, third-party defendant had failed to provide such representation. In its answer, the insurer alleged the incident was not covered by the liability provisions of the policy due to a provision which excluded coverage for any acts which were expected or intended by the insured.
Defendant filed an amending and supplemental answer in which he alleged plaintiff was guilty of contributory negligence which partially contributed to the incident and therefore his recoverable damages should be reduced in proportion to the degree or percentage of fault attributed to him. In the event the court deemed contributory negligence inapplicable, defendant alleged that any damages awarded should be mitigated due to the conduct of plaintiff in escalating the confrontation.
At the trial on the merits the testimony as to the actual battery was conflicting. Plaintiff testified he had served as an umpire for the West Monroe Adult Softball League for approximately ten years. He said defendant began to verbally abuse him after a call, requiring him to warn the team that if defendant did not quiet down he would forfeit the game. Plaintiff allowed the team to play the remaining inning during which defendant continually verbally abused him. After the game ended and he was exiting the Ouachita Electric Service dugout, plaintiff was confronted and threatened by defendant. Plaintiff stated he told defendant he would report the incident to the recreation department and defendant would not be allowed back at the ballpark. Plaintiff turned to walk toward *956 the concession stand with the defendant walking slightly behind him and was struck once unexpectedly by defendant. Plaintiff stated he did not make any threatening gestures and he had placed his face mask underneath his arm. As the result of the blow, plaintiff said he was knocked up against a fence, his glasses were broken and he was bleeding from the mouth. He stated that several officers from the Sheriff's Department had to restrain defendant after the initial blow. Plaintiff was treated at a local hospital and was eventually required to undergo extensive dental treatment and oral surgery, including four root canals and crowns.
Gordon Wilson, a player for the Sheriff's Department team, testified he recalled a fan rattling the fence, "hollering" and cursing the umpire after a call. He did not see defendant strike plaintiff but he did see plaintiff after the blow. Plaintiff was standing, leaning forward and holding his face. There was blood on plaintiff's hands and dripping from his face.
Ray Zeigler, another umpire at the game, testified that defendant had harassed plaintiff after the adverse call. Zeigler stated plaintiff stopped the game and warned the Ouachita Electric Service team that if harassment did not cease by their spectators he would have to call the game. He stated defendant was quieter but could still be heard in the background talking about the call. Zeigler stated that upon finishing a game the umpires usually go directly to the concession stand. When he and plaintiff exited the dugout, defendant was just outside. Zeigler stated plaintiff did not push, bump or make any threatening moves toward defendant. Plaintiff began to walk away from defendant and after going one step was struck in the mouth. The force of the blow popped the lens out of his eyeglasses and after the initial blow, defendant was restrained. Zeigler stated that throughout the incident he had a clear view and indicated plaintiff had his mask underneath his arm when he was talking to defendant.
Billy Myers, a member of the Sheriff's Department team, testified he observed plaintiff being struck when he was coming out of their dugout on the other side approximately 35-40 feet away. Myers stated that plaintiff had not made any threatening moves before being struck. He immediately ran over and tried to separate the parties.
Theresa Van Carter Redmond, defendant's daughter-in-law, testified she had attended the softball game. Mrs. Redmond stated that the spectators believed there had been bad calls by the umpire and some comments were made. She testified that plaintiff warned the spectators he would call the game and then told defendant "You shut up" or he would have him thrown out of the park. Mrs. Redmond testified that after the game defendant went into the dugout and she could hear plaintiff and defendant "hollering" as they came out. The parties were talking as they were walking and plaintiff was a step or two ahead of defendant. Mrs. Redmond stated plaintiff told defendant that he could have defendant thrown out of the park and then quite suddenly turned back toward the defendant with his mask in his right hand. At that time defendant punched plaintiff with a quick sharp punch. Mrs. Redmond was approximately two feet away from the parties when the blow occurred. She stated plaintiff's glasses fell to the ground and plaintiff stepped on them. Mrs. Redmond said that the force of the blow did not knock the plaintiff down but rather caused him to stumble backwards.
Mary Jean Redmond, defendant's wife, testified that she was also a spectator at the game. After the call against defendant's team, Mrs. Redmond said everyone started "hollering" that the player was safe. She testified that plaintiff angrily told the spectators to be quiet or he would eject them or call the game. After the game had ended defendant walked to the dugout to help the team gather up its gear and she observed plaintiff going to the dugout. Mrs. Redmond heard the parties arguing and plaintiff stating he bet defendant $100 he could throw him out of the park.
*957 Maurice Redmond, Jr., defendant's son, testified he played in the softball game. Redmond stated he heard plaintiff tell defendant he would throw him out of the ballpark as the parties walked through dugout. After exiting the dugout plaintiff then "wheeled around" with his mask in his hand and defendant struck him. As a result of the blow, plaintiff made a backward motion and stepped on his glasses.
Defendant testified that during the course of the game plaintiff came over to the fence and became angry at him. He was told plaintiff would eject him from the park. After the game ended defendant proceeded to the dugout. When plaintiff walked through the dugout, defendant stated plaintiff's shoulder hit him in the chest and defendant went into the dugout after him. Defendant said they talked as they proceeded through the dugout and plaintiff "hollered" he bet defendant $100 he would be ejected from the ballpark. Plaintiff then turned around with his mask in his hand. Defendant testified he thought at that moment that plaintiff would strike him and he struck plaintiff in the face. He stated he did not intend to hit plaintiff but rather intended to keep plaintiff from striking him. Defendant testified he did not intend that plaintiff be injured or incur damage to his teeth. Defendant stated the testimony of the witnesses as to plaintiff's bleeding surprised him as he did not think he had struck plaintiff that hard.
After the trial on the merits, the trial court found in favor of plaintiff and third-party defendant. In its written opinion, the trial court reviewed the testimony of the parties and witnesses as to the confrontation and found that the evidence established that defendant had allowed himself to become outraged at plaintiff over the call made against his team. His anger rekindled at losing the game and he confronted plaintiff inside the playing area where he had no reason to be and there, without any legal justification or provocation, committed a battery upon plaintiff by striking him in the mouth, causing the injuries and damages sustained by him. The court found plaintiff had proven the battery by a preponderance of the evidence. The court noted the medical testimony established that the blow to plaintiff's mouth was consistent with and caused significant trauma to six upper teeth requiring four root canals as well as other oral surgery. The court observed that plaintiff's injuries were quite painful and plaintiff had missed work and lost wages due to his dental treatments which began immediately after the battery and continued until January, 1988. As general damages for plaintiff's pain and suffering, the court found the sum of $20,000 was fair and adequate under the circumstances. The court further awarded plaintiff special damages in the amount of $4812.80 for past medical expenses and lost wages incurred as a result of the battery. The trial court found that as this matter was an intentional tort, contributory and/or comparative negligence was not applicable. The court further stated it had considered all the evidence in light of defendant's request for mitigation of damages and declined to grant the same. The court found that defendant's conduct after the game was unnecessary and his actions toward plaintiff were deliberate and intentional. In examining defendant's third-party demand, the trial court held the policy exclusion as to bodily injury which was expected and intended by the insured was applicable and, accordingly, the trial court denied defendant's claim.
On defendant's motion for a new trial, the trial court agreed it should have applied the principles of comparative fault to this matter. However, upon reviewing all of the testimony and the factors to be considered in apportioning fault, the trial court found the testimony did not establish by a preponderance of the evidence that plaintiff was at fault in causing or contributing to his injuries. Rather, the evidence established there was unprovoked battery committed by defendant when plaintiff was only trying to exit the playing field. The court further found there was nothing in the record to reverse its previous decision that the insurer's policy of insurance did not provide coverage to defendant for this incident.

*958 Liability for Battery

It is well-settled that a Court of Appeal may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong" and, where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel its own evaluations and inferences are as reasonable. The trial judge is in a better position to evaluate the credibility of the witnesses and the weight of the evidence than an appellate court who does not see or hear the witnesses. For this reason, a reviewing court should adopt the trial court's findings as its own in the absence of clear error, even if other conclusions from the same evidence are equally reasonable. Rosell v. Esco, 549 So.2d 840 (La.1989); Harris v. Pineset, 499 So.2d 499 (La.App. 2d Cir.1986), writ denied, 502 So.2d 114 (La.1987) and 502 So.2d 117 (La. 1987), and Perkins v. Certa, 469 So.2d 359 (La.App. 2d Cir.1985).
A battery is any intentional and unpermitted contact with the plaintiff's person or anything attached to it or practically identified with it. In order to recover for a battery, plaintiff must prove by a preponderance of the evidence that his damages resulted from an unprovoked attack by defendant. The intention of the defendant need not be malicious nor need it be an intention to inflict actual damage. It is sufficient if the actor intends to inflict either a harmful or physical contact without the other's consent. Liability for a battery depends upon the facts and circumstances of each case. Where the defendant relies upon provocation as justification for a battery, he must prove some conduct or action by the plaintiff sufficient to provoke and arouse defendant to the point of physical retaliation. Louisiana's aggressor doctrine precludes tort recovery by plaintiff if the evidence establishes he was at fault in provoking the difficulty in which he was injured, unless the person retaliating has used excessive force to repel the aggression. Caudle v. Betts, 512 So.2d 389 (La. 1987); England v. S & M Foods, Inc., 511 So.2d 1313 (La.App. 2d Cir.1987); Robinson v. Hardy, 505 So.2d 767 (La.App. 2d Cir.1987), writ denied, 508 So.2d 825 (La. 1987), and Thigpen v. Stern, 503 So.2d 1050 (La.App. 2d Cir.1987), writ denied, 506 So.2d 113 (La.1987).
On appeal, defendant argues the trial court erred in finding plaintiff had proven by a preponderance of the evidence that defendant intended to commit a battery upon the plaintiff. We disagree.
The record shows that defendant had become angry with plaintiff during the game and verbally harassed plaintiff periodically throughout the remainder of the game. After the game concluded defendant proceeded to his team's dugout and confronted plaintiff as he was proceeding through the dugout area, which was his normal practice at the end of each game. Defendant verbally harassed plaintiff about his authority to eject defendant from the park if disruptive during a game. The evidence established that plaintiff continued to walk through the dugout toward the concession stand and was followed closely behind by defendant who was apparently intent upon provoking a confrontation with plaintiff through verbal harassment. There was no evidence that plaintiff pushed or made any threatening moves toward defendant in any manner so as to cause defendant to believe it was necessary to defend himself. Rather, it is clear that the blow to plaintiff was completely unexpected and unprovoked.
Considering all the circumstances surrounding this incident, it appears clear that defendant did intend to strike plaintiff and the trial court was not manifestly erroneous in this determination.

Comparative Negligence
Contributory negligence is conduct on the part of plaintiff which falls below the standard to which he should conform for his own safety and protection, that standard being that of a reasonable man under like circumstances. Harris v. Pineset, supra. La.C.C.Art. 2323 provides that a plaintiff whose negligence contributes to his own injuries for which he seeks damages shall have his claim reduced in proportion *959 to his degree of fault. The determination and apportionment of fault are factual matters and the trial court's findings in this regard should not be disturbed by a reviewing court unless they are erroneous. Chandler v. Jones, 532 So.2d 402 (La.App. 3d Cir.1988) and Finley v. Bass, 478 So.2d 608 (La.App. 2d Cir.1985).
In assessing comparative fault the trial court must consider the nature of each party's conduct and the extent of the causal relationship between the conduct and the damages claimed. Relevant factors concerning the nature of each party's conduct include: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Watson v. State Farm Fire and Casualty Insurance Company, 469 So.2d 967 (La.1985) and Dooley v. Wright, 501 So.2d 980 (La.App. 2d Cir.1987), writ denied, 512 So.2d 442 (La.1987).
It is well-settled that it is within the trial court's discretion to mitigate a general damage award when plaintiff's conduct helps create the circumstances giving rise to the injury. Mere words, even though designed to excite or irritate, cannot excuse a battery. However, words which are calculated to provoke and arouse to the point of physical retaliation may mitigate damages in a civil action. How and when damages are mitigated are determinations which are within the discretion of the trial court. Thigpen v. Stern, supra; Walpole v. Weathersby, 465 So.2d 950 (La.App. 2d Cir.1985); DiBenedetto v. Stark, 428 So.2d 864 (La.App. 1st Cir.1983), and Downey v. Clark, 426 So.2d 331 (La.App. 2d Cir.1983).
Since the adoption of comparative fault, this court has held that the principles of La.C.C.Art. 2323 are a more appropriate approach rather than the concept of mitigation of damages. Where the words or actions of the plaintiff in a civil battery action are sufficient to establish provocation which would warrant a mitigation of damages, the court should apply comparative fault principles based upon the facts and circumstances of the case. Thus, the guidelines enunciated by the Supreme Court in Watson v. State Farm Fire and Casualty Company, supra, would be applicable in determining the percentage of plaintiff's fault, if any. This court has found that the principles of comparative fault within the context of La.C.C.Art. 2323, while perhaps yielding the same result as the concept of mitigation of damages, are better suited to a resolution of such circumstances. Jones v. Thomas, 557 So.2d 1015 (La.App. 4th Cir.1990); Robinson v. Hardy, supra, and Harris v. Pineset, supra.
Defendant argues the trial court erred in failing to mitigate the general damage award as plaintiff's actions precipitated and provoked the incident and further the trial court erred in failing to acknowledge the applicability of comparative fault in an intentional tort case. This argument is without merit.
It is clear from the opinion of the trial court in its denial of defendant's motion for a new trial that the trial court found it should have applied the principles of comparative fault to this matter. However, the court concluded upon a review of the testimony and the factors to be considered in apportioning fault that the testimony did not establish by a preponderance of the evidence that plaintiff was at fault in causing or contributing to his injuries so as to require a reduction of his damages. We agree.
The record shows that when defendant began his attempts to confront plaintiff following the conclusion of the game, plaintiff attempted to avoid such a confrontation by walking ahead of defendant and toward the concession stand. Defendant continued to walk behind plaintiff and to verbally harass him as to his authority to eject defendant from the park. There was no evidence that plaintiff acted verbally or physically to escalate the situation but rather was attempting to avoid any type of *960 confrontation when struck unexpectedly by defendant. Under these circumstances we find plaintiff was not guilty of any comparative fault so as to reduce his recovery for injuries sustained by him.

Insurance Coverage
Insurance policies are to be construed in their ordinary and popular sense, with any ambiguities construed against the insurer which prepared the policy and in favor of coverage. Any exclusion from coverage in an insurance policy must be clear and unmistakable. If more than one interpretation of an exclusion is reasonable, the one affording coverage to the insured will be adopted. Marsh v. Reserve Life Insurance Company, 516 So.2d 1311 (La. App. 2d Cir.1987); Creech v. Aetna Casualty & Surety Company, 516 So.2d 1168 (La.App. 2d Cir.1987); Hampton v. Lincoln National Life Insurance Company, 445 So.2d 110 (La.App. 2d Cir.1984), and 70th Street Food Store v. Northeastern Fire Insurance, 408 So.2d 958 (La.App. 2d Cir.1981).
In defendant's homeowner's insurance policy which was issued by third-party defendant, Aetna Casualty & Surety Company, the policy provides that personal liability coverage and medical payments to others do not apply to bodily injury or property damage which is expected or intended by the insured.
In interpreting an identical provision, the Supreme Court in the recent case of Breland v. Schilling, 550 So.2d 609 (La. 1989) found the purpose of the intentional injury exclusion is to restrict liability insurance coverage by denying coverage to an insured in circumstances where the insured acts deliberately and intends or expects bodily injury to another. The exclusion is designed to prevent an insured from acting wrongfully with the security of knowing that his insurer will "pay the piper" for the damages. On the other hand, the purpose of liability insurance is to afford the insured protection from damage claims. Policies should be construed to effect, not deny, coverage and any exclusion from coverage will be narrowly construed. The court noted the effect of the language used in the exclusion clause was not always clear and in fact had often been construed to be ambiguous. The court found the phrase "bodily injury ... which is expected or intended" emphasized that an excluded injury was one which the insured intended, not one which the insured caused, however intentional the injury-producing act. The next phrase "from the standpoint of the Insured" emphasized again it was the insured's subjective intention and expectation which limited the scope of the exclusion. The subjective intention and expectation of the insured determined which injuries fell within and which fell beyond the scope of coverage under the policy. After extensively examining the decisions of the courts of other states in resolving the ambiguity of the intended injury exclusion clause, the Supreme Court held that when minor bodily injury was intended and such resulted, the injury was barred from coverage. When serious bodily injury was intended and such resulted, that injury was also barred from coverage. Further, when a severe injury of any given sort was intended and a severe injury of that sort occurred, then coverage was also barred. However, when a minor injury was intended and a substantially greater or more severe injury resulted, whether by chance, coincidence, accident, or whatever, coverage for the more severe injury was not barred. Whether the given resulting bodily injury was intended "from the standpoint or the Insured" within those parameters was a question of fact. See also Pique v. Saia, 450 So.2d 654 (La.1984); Barras v. Benoit, 509 So.2d 668 (La.App. 3d Cir. 1987); Sabri v. State Farm Fire and Casualty Company, 488 So.2d 362 (La.App. 3d Cir.1986), writ not considered, 493 So.2d 630 (La.1986), Walpole v. Weathersby, supra, and Bloodworth v. Carroll, 455 So.2d 1197 (La.App. 2d Cir.1984), reversed on other grounds, 463 So.2d 1313 (La.1985).
A review of the record in light of the above jurisprudence establishes that the trial court erred in holding that the insurer's policy of insurance did not provide coverage to defendant for this incident.
*961 The circumstances surrounding the conduct of defendant demonstrates his actions were not premeditated and not intended to inflict the serious injury plaintiff sustained. Defendant testified he did not think he had struck plaintiff with enough force to inflict a bloody mouth and he did not intend for plaintiff to be injured. Defendant characterized his blow as a "sharp, quick punch" more in the nature of a provocative gesture rather than a forceful blow intended to inflict serious injury. It is significant to note this incident occurred at a sporting event in which defendant was interested as a sponsor of the team, which circumstance would support the conclusion that the blow was more a gesture of anger and frustration rather than a deliberate effort on the part of defendant to inflict bodily harm upon plaintiff. As we find the evidence demonstrates defendant did not intend or expect such a serious injury to result from his conduct, we find that coverage under defendant's homeowner policy is not excluded.

Attorney's Fees
Defendant is entitled to recover reasonable attorney's fees incurred by him in defense of this action as the result of third-party defendant's denial of coverage and unjustifiable refusal to provide legal representation. Petrol Industries v. Gearhart-Owen Industries, 424 So.2d 1059 (La. App. 2d Cir.1982).
After examining the affidavit of time and costs of defendant's attorney which was filed into evidence, we find that an award of $2000 for reasonable attorney's fees is appropriate. Defendant is further entitled to an award of attorney's fees in the amount of $1000 for services rendered on appeal.

Decree
For these reasons, the judgment of the trial court in favor of plaintiff and against defendant is AFFIRMED. The judgment dismissing the third-party demand is REVERSED, and there is judgment in favor of the third-party plaintiff, Maurice Redmond, and against the third-party defendant, Aetna Casualty and Surety Company, for the amount of the judgment on the main demand against defendant, and for attorney fees in the sum of $3000.