735 So.2d 753 (1999)
Lester FRAME, et al., Plaintiffs Appellants,
v.
Dr. Barry COMEAUX, et al., DefendantsAppellees.
No. 98-1498.
Court of Appeal of Louisiana, Third Circuit.
April 21, 1999.
*754 Michael Voorhies Matt, Eunice, for Lester Frame and Patsy Frame, etc.
Donald Wayne Hebert, Opelousas, for Barry Comeaux et al.
Before DOUCET, C.J., SAUNDERS, and SULLIVAN, Judges.
SULLIVAN, Judge.
Lester and Patsy Frame appeal the judgment of the trial court denying their claims against Defendants, Dr. Barry Comeaux, Opelousas Catholic School, Inc., and the Diocese of Lafayette. The Frames sued Defendants individually and on behalf of their minor son, Casey, a former student of Opelousas Catholic School, Inc., for an incident that occurred on March 16, 1995 involving Casey and Dr. Comeaux and for refusing to allow Casey to enroll at the school for the 1995-1996 school year. We affirm the judgment of the trial court.

STANDARD OF REVIEW
Findings of fact by the trial court cannot be set aside in the absence of manifest error or unless the findings are clearly wrong. Where there are conflicts in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review. Rosell v. ESCO, 549 So.2d 840 (La.1989). The fact finder's choice between two permissible views of the evidence cannot be manifestly erroneous. Id. It is the function and prerogative of the trial court to determine the credibility of the witnesses that appear before it. Bruno v. Harbert Intern., Inc., 593 So.2d 357 (La.1992). This court must review the record in its entirety to determine whether the findings of the trier of fact are clearly wrong or manifestly erroneous. Stobart v. State, DOTD, 617 So.2d 880 (La.1993).
We believe it is important at the outset of our review of this matter to identify the role of schools in educating our youth and the necessity and responsibility of the schools to maintain the discipline necessary to fulfill this role. This court in Jones on Behalf of Cooper v. W.T. Henning Elementary School Principal, 98-470, p. 3 (La.App. 3 Cir. 10/28/98); 721 So.2d 530, 532, addressed these issues, stating:
The primary objective of school officials and teachers is the education of the young people in their charge. If a teacher, or principal, is unable to establish discipline and maintain an orderly learning environment, the objective of education cannot be met. In today's society, where educators must compete for their students' attention against numerous outside influences, there is a greater necessity to ensure that students are given the opportunity to learn in a positive and orderly environment free from distractions.
We have conducted our review of this matter in light of these objectives and conclude that no error was committed by the trial court. The Reasons for Decision issued by the trial court are concise and accurate. We adopt the following pertinent portions of the reasons as our own and interject additional comments where deemed appropriate.

*755 FACTS

On March 8, 1996, plaintiffs filed a Petition for Damages based upon the theories of assault and battery; breach of contract/detrimental reliance; and abuse of rights. A bench trial was held in this matter on December 4, 1997, to determine liability and, if applicable, the extent of damages.
The undisputed facts based on the testimony and evidence adduced at trial are as follows. On March 15, 1995, Casey Frame was an eighth grade student and Dr. Barry Comeaux was a science teacher at Opelousas Catholic School. On that day, Dr. Comeaux was acting as a substitute teacher for Casey's last period class. As requested by Casey's regular teacher, Dr. Comeaux was administering a spelling test to the eighth graders. During the course of the test, Dr. Comeaux requested several disruptive students to leave the room; the students complied. Thereafter, Casey Frame spoke aloud during the test. Dr. Comeaux asked Casey twice to leave the classroom and then approached Casey's desk. Casey responded by slowly standing-up and facing Dr. Comeaux. Simultaneously, Dr. Comeaux grabbed Casey by the arm and assisted him out of the classroom. Casey was propelled backwards up the aisle and towards the classroom door. Casey struck a podium and came to a halt with his back against a blackboard before he was turned around and removed from the classroom.
When Casey arrived home later that evening, Casey's mother, Patsy Frame, contacted the police and pressed criminal charges against Dr. Comeaux. The next morning, Lester and Patsy Frame met with the Opelousas Catholic principal, Karen Domengeaux; the assistant principal, Herb Gros; and Dr. Comeaux. The Frames requested that Dr. Comeaux be dismissed from his employment. Principal Domengeaux refused, stating that an investigation would be completed before any action was taken.
The Frames were apprised of their right to appeal Principal Domengeaux's decision at the meeting of March 16, 1998[sic]; however, no effort was made to appeal this decision. Thereafter, in July, 1995, Principal Domengeaux was informed by the St. Landry Parish District Attorney that the charges against Dr. Comeaux would not be pursued. At the next school board meetingon August 14, 1995it was determined that Casey Frame's application for admission was rejected. On August 15, 1995, the Frame's [sic] were notified by telephone of the school board's decision.
ASSAULT AND BATTERY
The first issue to be addressed is whether Dr. Comeaux's actions on March 15, 1995, constituted an assault and battery on Casey Frame. Black's Law Dictionary defines assault and battery as "(a)ny unlawful touching of another which is without justification or excuse." Battery requires a "touching;" assault does not require physical contact.
Plaintiffs argue that Casey was attacked by Dr. Comeaux. They further argue that this attack was unprovoked. Finally, the plaintiffs argue that even if Dr. Comeaux's actions were provoked, they were excessive in light of the situation.
Defendants argue that Dr. Comeaux was appropriately maintaining classroom order and discipline when Casey was removed from the room. Dr. Comeaux testified at trial that he thought Casey was threatening him when he stood up to Dr. Comeaux and failed to retreat from the classroom. Hence, Dr. Comeaux felt apprehensive and reacted to what he perceived as a potentially explosive situation.
Plaintiffs' counsel cites Caudle v. Betts, 512 So.2d 389 (La.1987) and Baugh v. Redmond, 565 So.2d 953 (La. *756 App. 2 Cir.1990) for the proposition that Dr. Comeaux was forbidden to use excessive force to expel a student from class....

Baugh is relative to this case. Baugh deals with the aggressor doctrine which precludes recovery when the plaintiff provokes the altercation. The Baugh Court found that the victim had made no "threatening moves toward defendant in any manner so as to cause defendant to believe it was necessary to defend himself. Rather, it is clear that the blow to plaintiff was completely unexpected and unprovoked." Baugh at 958. Here, we have a contrary situation. The evidence indicates that Casey Frame was confrontational with Dr. Comeaux. While Casey did not swing at his teacher, he was moving very slowly and ultimately "faced-off" with Dr. Comeaux. Dr. Comeaux was provoked to forcefully remove Casey.
The next inquiry is whether the force exerted by Dr. Comeaux was excessive. The Baugh Court points out that if excessive force is used to retaliate, then the defendant would no longer have a justification defense. This Court had the opportunity at trial to listen to the testimony of and observe the credibility of all of the parties. Further, this Court had the opportunity to view pictures of the minimal bruises sustained by Casey Frame. Dr. Comeaux indicated that he felt threatened and was attempting to diffuse the situation. In view of this, Dr. Comeaux did not overreact.
A teacher must maintain order in the classroom. This is necessary not only to protect students, but to facilitate the learning process. The evidence indicates that Casey Frame misbehaved and subsequently responded in an aggressive fashion to his substitute teacher. Hence, Dr. Comeaux was justified in removing a problem child from his classroom.
In Caudle, 512 So.2d at 391, the supreme court held that "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact, is a battery." The court then explained that "[t]he intent with which tort liability is concerned is not necessarily a hostile intent, or a desire to do any harm. Rather it is an intent to bring about a result which will invade the interest of another in a way the law forbids." Id. (citation omitted; emphasis added). As this court recognized in Jones, schools have an obligation to all of the children in their charge. There are occasions when it is necessary for school personnel to administer discipline in order to fulfill this obligation. Dr. Comeaux's contact with Casey to forcefully remove him from the classroom after Casey failed to comply with his instructions does not meet the definition of battery. Dr. Comeaux was obligated to maintain discipline in his classroom. His actions were not excessive. They were necessary to maintain control of the classroom and cannot be considered as invading the interests of Casey Frame in a manner forbidden by law.
Our opinion herein is not a blanket approval of all disciplinary actions taken by schools simply because they are alleged to be necessary to maintain order and facilitate learning. Rather, we adopt the approach taken by the court in Baugh, 565 So.2d 953, i.e., each case must be considered on the facts and circumstances present therein.
BREACH OF CONTRACT
In order to determine whether there was a breach of contract, we must first determine whether there was a contract between Opelousas Catholic School and the Frames. The following are the salient facts. On January 30, 1995, a letter was sent to all parents of Opelousas Catholic School urging registration for the forthcoming year. The Frames responded by registering Casey for the 1995-1996 school year and paid the registration and facility fees. Thereafter, at some point during the Summer 1995, *757 the Frames received the 1995-1996 class schedule for Casey. Finally, on August 18, 1995, the Frames received a letter informing them that their son would not be allowed to attend Opelousas Catholic. This notice was received prior to the opening of the public school year. The Frames were reimbursed the fees which they had previously paid and notified that the school would "be happy to reimburse any other expenses incurred such as the cost of school uniforms and supplies." The Frames then obtained a temporary restraining order which required that Opelousas Catholic allow Casey to attend its school. However, at the injunction hearing, the Court denied a permanent injunction.
When the Frames registered with Opelousas Catholic in early 1995, the contract was made with a "suspensive" condition. That is, it was necessary for an event to take place before the obligations were initiated. See generally Zemurray v. Boe, 235 La. 623, 105 So.2d 243 (1958). This suspensive condition was that the school would accept Casey as a student for the following year. The parties' respective obligations would exist at the beginning of the school year in August, 1995.
It is inherent in this kind of this contract that things may happen which could place matters as though the obligation had never existed. In this case, Casey Frame had an altercation with one of his teachers after registration. The school board felt that Casey's presence at Opelousas Catholic would have an adverse effect on the purpose of the institution, that is to facilitate learning in a harmonious, Christian environment....
Assuming in arguendo that there was a breach of contract, this Court finds that the element of damages was not proven at trial. The Frames were refunded the monies they had paid to Opelousas Catholic. Furthermore, Opelousas Catholic offered to refund any financial outlay for books or uniforms. Finally, Casey Frame had the opportunity to attend public school without missing a day of school. Hence, Casey did not lose an educational advantage. Under these circumstances the Frames simply did not sustain damages.
This Court reached the same conclusion at the injunction hearing. In its Reasons for Judgment this Court noted that "Opelousas Catholic cannot be bound by the February registration which occurred in light of the fact that the incident leading to Casey Frame's problems did not occur until March of 1995."
The trial court determined that the contract between Opelousas Catholic and the Frames for Casey's attendance at the school for the 1995-1996 school year was subject to a suspensive condition. An obligation is conditional if it is dependent on an uncertain event. La.Civ.Code art. 1767. If the obligation cannot be enforced until the uncertain event occurs, the condition is suspensive. La.Civ.Code art. 1767. The comments to Article 1767 explain that "[i]n its proper sense the word `condition' means some operative fact subsequent to acceptance and prior to discharge, a fact upon which the rights and duties of the parties depend." Accordingly, "[t]he right to enforce the obligation does not arise until the fulfillment of the suspensive condition, and the obligation may not be enforced until the condition is met." Hampton v. Hampton, Inc., 97-1779, p. 8 (La. App. 1 Cir. 6/29/98); 713 So.2d 1185, 1190.
The school board of Opelousas Catholic School determined that it would not be in the best interest of the school or Casey Frame for Casey to attend the school for the 1995-1996 school year. Therefore, the suspensive condition that the school would accept Casey as a student in August 1995 was not fulfilled, and the Frames have no right to enforce Casey's enrollment as a student at the school.

*758 ABUSE OF RIGHTS

Plaintiffs allege that Dr. Comeaux/Opelousas Catholic abused Casey's rights by physically removing him from the classroom on March 15, 1995. This is a fairly obscure theory, hence, some illumination on this subject is required. In essence, Plaintiffs claim that Opelousas Catholic abused its authority and acted in bad faith. In Oliver v. Central Bank, 658 So.2d 1316 (La.App. 2 Cir.1995), [writ denied, 95-1469 (La.9/22/95); 660 So.2d 477], the court found that one of the following conditions must exist for this abuse to exist:
(1) The exercise of the right was exclusively or predominately to harm another;
(2) There was no serious or legitimate interest which required protection;
(3) Moral rules, fairness or good faith were violated;
(4) The right was exercised for a purpose other than for which it was granted.
Certainly, the first condition does not exist. Without a doubt, Dr. Comeaux's primary motivation was not to punish or harm Casey Farm [sic]. Quite simply, he was trying to maintain harmony and discipline. The second condition is, of course, inapplicable. Obviously, Opelousas Catholic has a serious interest in maintaining harmony and order and promoting education at its facility. As to the third condition, Opelousas Catholic acted fairly and with good faith. It immediately notified the Frames of their appeal rights when they disagreed concerning the dismissal of Dr. Comeaux. Furthermore, as soon as the investigation was complete and the school board met, Opelousas Catholic notified the Frames of their decision. Finally, the power to reprimand Casey was exercised for the reason that it was granted. That is, Casey was reprimanded and removed from the classroom in order to maintain discipline. In sum, this Court does not find that Opelousas Catholic abused its right to discipline Casey Frame.

(Emphasis added.)
We emphasize the trial court's closing remarks because they embody the principles that we believe are indispensable to the successful education of children and the resolution of this matter. The judgment of the trial court is affirmed. Plaintiffs are cast with all costs of this appeal.
AFFIRMED.