# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**04-979**

**VICKIE BOONE, INDIVIDUALLY AND
ON BEHALF OF MINOR, BRANDON BOONE**

**VERSUS**

**WAYNE REESE AND CALCASIEU PARISH SCHOOL BOARD**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2001-4387
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**MARC T. AMY
JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Marc T. Amy, and Billy Howard Ezell, Judges.

**AFFIRMED.**

Andre' J. Buisson
Woodley, Williams, Boudreaux,
Norman, Brown & Doyle, LLC
Post Office Box 3731
Lake Charles, LA   70602
(337) 433-6328
COUNSEL FOR DEFENDANTS/APPELLEES:
    Calcasieu Parish School Board
    Wayne Reese

Vickie Boone
1720 Gieffers Street
Lake Charles, LA   70601
(337) 491-9031

AMY, Judge.

The plaintiff brought suit individually and on behalf of her minor son against his physical education teacher and the school board that employed him. The plaintiff alleged that her son suffered serious injuries as a result of being called names and pushed into a wall by the teacher in class. The trial court found that although the student was called names, the plaintiff had not proven that the teacher exercised malice in referring to the student by the nicknames alleged. Further, the trial court found that the teacher's physical contact with the student was not unreasonable given the necessity to maintain control in the classroom. For the following reasons, we affirm.

**Factual and Procedural Background**

The record of proceedings below indicates that on January 17, 2001, Brandon Boone, the son of the plaintiff herein, was a freshman at Washington-Marion Magnet High School ("Washington-Marion") in Lake Charles. His teacher for his physical education class was one of the school's coaches, Mr. Wayne Reese, a defendant herein. Brandon's mother testified that Brandon was born with a congenital heart condition, for which he had been treated throughout his life. Brandon testified that, due to his heart condition, he had not participated in his physical education courses in elementary and middle school. Brandon explained that after he began attending Washington-Marion, he reported his condition to his guidance counselor, Ms. White. Brandon further stated that he witnessed the counselor call the office of one of his doctors and that he thought that Ms. White had obtained a medical excuse prior to January 17, 2001. However, Ms. White testified that Brandon's school file did not contain any medical excuses and that although she had attempted to notify Brandon's doctor's office and his mother, she did not receive any written documentation of

Brandon's condition until after January 17, 2001. She went on to explain that in order to comply with state educational requirements, students cannot be excused from physical education class without a written medical confirmation documented in the student's record. Brandon testified that his participation in Mr. Reese's class had caused "problems" prior to January 17, 2001; he stated, "I would tell him [Mr. Reese] that I couldn't do much of the stuff, and he would say, 'Well, go walk around the whole entire class period,' and I told him, 'I can't;' and then normally he would call me 'heart man' or 'heart attack.'"

Brandon stated that when he attended his physical education class on January 17, 2001, the coach instructed the whole class to run around the gym at the start of the class. Brandon stated that the coach then told him personally to run, and that he responded by telling the coach that he could not run due to his heart condition. He stated that the coach then told him that instead of participating in the day's exercises, he could walk around the gym for the duration of the class period. Brandon testified that, instead of running, he sat down on a set of removable bleachers on the side of the gym. Brandon stated that, upon seeing him seated, Mr. Reese walked toward him and said, "I told you to go walk around." According to Brandon, Mr. Reese then grabbed his shirt and pushed him with enough force to cause Brandon to fall back and into a wall. Brandon said that Mr. Reese then sent him to the office, where he told a guidance counselor, Ms. Gray, what had just occurred. Ms. Gray and Brandon returned to the gym and they spoke with Mr. Reese in the hallway.

Brandon testified that he attended the rest of his classes that day and told his mother, Ms. Vickie Boone, about the incident when he returned home after school. Ms. Boone testified that, upon hearing of the incident, she arranged for a meeting

2

with the school principal, Ms. Miller, and the coach the next morning. Ms. Boone took Brandon to the emergency room on the evening of January 17, 2001, and she stated that she also contacted the police department regarding the incident, but later declined to file charges. The plaintiff alleges that, as a result of his impact with the wall, a valve in Brandon's heart was damaged and now has a leak that will require treatment in the future. Ms. Boone filed suit on August 28, 2001, alleging that Mr. Reese "slandered and assaulted" Brandon, and requesting damages for Brandon and herself for a loss of consortium, services and society of Brandon. Mr. Reese and the Calcasieu Parish School Board were named as defendants.

A bench trial was held, beginning on November 3, 2003. Following the plaintiff's case, the court granted an involuntary dismissal, dismissing the plaintiff's slander claim. The trial continued on the remaining assault/battery claim.

Mr. Reese's testimony provided a different account of the events that occurred on January 17, 2001. Mr. Reese testified that Brandon did not change into his uniform for physical education class that day. He stated that he allowed Brandon to abstain from the class activity that day, but that he told Brandon twice to walk around the gym. He turned to check on Brandon and noticed that he still was not walking and, according to Mr. Reese, "I went to Brandon and I grabbed Brandon by the hand. I said, 'Brandon, you're gonna walk,' and he went off." Mr. Reese testified that Brandon began to call him names and, in response, he told Brandon to leave.

The trial court ruled in favor of the defendants, finding that there was a physical contact between Mr. Reese and Brandon, but that the contact "was necessary to maintain control of the classroom" and did not meet the definition of a battery. The plaintiff appeals, appearing before the court in proper person, and asserts that the

3

trial court erred in granting an involuntary dismissal of the slander claim and in finding that a battery had not been committed. She further asserts that the trial judge should have recused himself from the case.

**Discussion**

*Involuntary Dismissal of Slander Claim*

Following the plaintiff's case-in-chief, the defendants moved for an involuntary dismissal of the slander claim, stating that the plaintiffs had not proven that the verbal encounters between Mr. Reese and Brandon had "rise[n] to the level of being an intentional infliction of emotional distress." The plaintiffs argued that Mr. Reese called Brandon "heart attack" or "heart man" in front of the other students, which was "outrageous and humiliating and such that it should have never been done, particularly by a teacher to a student."

Slander is a method of defamation, which is "communicated by 'oral expressions or transitory gestures.'" *City of Natchitoches v. Employers Reinsurance Corp.*, 02-147, p. 5 (La.App. 3 Cir. 6/5/02), 819 So.2d 413, 417 (*quoting* BLACK'S LAW DICTIONARY 1388 (6th ed. 1990)). The following elements must be proven to prevail on a defamation claim:

> (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. In other words, a plaintiff must prove "'that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused plaintiff damages.'"

*Id.* at 418 (citations omitted) (*quoting Fitzgerald v. Tucker*, 98-2313, p. 10 (La. 6/29/99), 737 So.2d 706, 715-16).

4

An involuntary dismissal at the close of the plaintiff's case is provided for in La.Code Civ.P. art. 1672(B).[1] The trial court is granted much discretion in determining whether to grant an involuntary dismissal. *Kite v. Carter*, 03-378 (La.App. 3 Cir. 10/1/03), 856 So.2d 1271. The trial court's grant of an involuntary dismissal is proper if, after weighing and evaluating all of the evidence that has been presented by the plaintiff, the trial court determines that the plaintiff has failed to prove his claim by a preponderance of the evidence. *Id.* The manifest error standard of review applies to the trial court's grant of an involuntary dismissal. *Id.*

The record reflects that the plaintiff offered Brandon's own testimony that Mr. Reese called him "heart man" and "heart attack" "[p]retty much every time" that he saw Brandon, and that other students heard the names. He stated that the names embarrassed him and that prior to January 17, 2001, he had reported the problem to Ms. Miller, the school's guidance counselors and a member of the school board.

Ms. Boone testified that she did not learn that Mr. Reese had called Brandon either of the names until January 17, 2001, when Brandon told her about what had occurred in class that day.

DeMarcus Bushnell testified that he was in Brandon's physical education class on January 17, 2001. He stated that he had heard Brandon called "heart man" by other students in middle school. He said that nicknames were commonly used in

_____

[1] La.Code Civ.P. art. 1672(B) provides:

> In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

physical education classes at Washington-Marion and that the coach did refer to Brandon with the name often. He testified that he never heard Brandon ask the coach to stop using the name and he never noticed Brandon become upset over the use of the name.

John Eric LeBlanc, a student who was also present during the incident, testified, stating that Mr. Reese called Brandon "heart attack" "[j]ust about every time he saw him." He testified that Brandon would get angry when other students called him "heart attack" and ask them to stop calling him by that name, but he was unsure whether Brandon had asked Mr. Reese not to use the name. He stated that, "[t]here were nicknames that other students had given to other students, and some of the teachers would call them that, too. So he [Mr. Reese] would call some of the students by their nicknames."

The trial court granted the motion, finding that the plaintiff had not established the elements of a slander claim by a preponderance of the evidence. The court stated:

> The Court finds it questionable in reviewing, number one, as to whether or not the words would be considered defamatory. It appeared to be the use and custom upon freshman entering high school, at least at the Washington Marion campus, that nicknames would be given to those individuals, either based on physical attributes and/or character traits that may have occurred while they were in middle school. But just for the sake of argument, let's assume that the terms heart man and heart attack were considered defamatory. Were they published? They were stated before the student body of the physical education class, at least as per the witnesses submitted by the plaintiff. Falsity; well, it is obvious that Mr. Brandon Boone had a heart condition, but the words — I don't think that the falsity issue is such that it would be applicable to this. The problem that the Court has in even hearing number five, resulting injury, Mr. Boone has indicated that it did cause him some embarrassment, humiliation, and other witnesses have corroborated that.
>
> The Court cannot find that malice has not been established, that the coach was using this term to specifically defame or cast a personal reflection on the defendant. While one could say that is possible, there has been no evidence to the contrary. In fact, the [sic] Coach Reese has

6

not been called under cross, nor has any other testimony indicated that it was done other than in the normal usage within the school custom.

The trial court clearly considered the evidence offered by the plaintiff in light of each element. Based upon our examination of the record, we do not find that the trial judge committed manifest error in concluding that the plaintiff had not submitted enough evidence to prove the elements necessary to recovery for a defamation claim of slander. This assignment is without merit.

*Battery*

The plaintiff asserts that Mr. Reese's handling of Brandon amounted to a battery, alleging at trial that Mr. Reese was "irritated and upset and frustrated" at Brandon's refusal to participate and because of that, "he grabbed him [Brandon] and slammed him against the wall[,]" causing him serious physical damage. The plaintiff argued at trial that, under the circumstances, "any type of touching . . . was not warranted and was unreasonable and improper."

"*Black's Law Dictionary* defines assault and battery as '(a)ny unlawful touching of another which is without justification or excuse.' Battery requires a 'touching;' assault does not require physical contact." *Frame v. Comeaux,* 98-1498, p. 4 (La.App. 3 Cir. 4/21/99), 735 So.2d 753, 755 (alteration in original).

We find this court's analysis in *Frame* instructive in the instant case. In *Frame*, a teacher commanded an eighth grade student to leave the classroom due to the student's disruptive behavior during a test. The student responded by standing up slowly and facing the teacher as he approached the student's desk. The teacher grabbed the student's arm to lead him out, and as the student was compelled toward the door, he ran into a podium. In finding that a battery was not committed, this court stated:

7

In *Caudle*, 512 So.2d at 391, the supreme court held that "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact, is a battery." The court then explained that "[t]he intent with which tort liability is concerned is not necessarily a hostile intent, or a desire to do any harm. Rather *it is an intent to bring about a result which will invade the interest of another in a way the law forbids*." *Id.* (citation omitted; emphasis added). As this court recognized in *Jones*, schools have an obligation to all of the children in their charge. There are occasions when it is necessary for school personnel to administer discipline in order to fulfill this obligation. Dr. Comeaux's contact with Casey to forcefully remove him from the classroom after Casey failed to comply with his instructions does not meet the definition of battery. Dr. Comeaux was obligated to maintain discipline in his classroom. His actions were not excessive. They were necessary to maintain control of the classroom and cannot be considered as invading the interests of Casey Frame in a manner forbidden by law.

*Frame*, 735 So.2d at 756 (*quoting Caudle v. Betts*, 512 So.2d 389, 391 (La.1987)) (alteration in original).

In its reasons for judgment, the trial court in the instant matter explained that, in its ruling on liability, it accorded the testimony of the eyewitnesses to the event greater weight than that of Mr. Reese and Brandon. The trial judge found John Eric Leblanc's testimony that he saw Brandon be grabbed and pushed to be credible. The trial judge stated that Demarcus Bushnell's testimony suggested that there was a push, although it was not a forceful one. The judge stated that:

> He corroborates that there was some type of confrontation, that Brandon stepped up to the coach and made some statements to him, although he said Mr. Boone was soft-spoken and he could not actually hear the words that transpired, but I believe his specific impression of the situation as may have been impressed by all of the students in the classroom was that Mr. Brandon Boone was disrespecting the coach and his authority to run the class.

The trial judge further stated that Temisha McArthur, another student, did not actually witness the incident directly, although she testified that she heard Mr. Reese ask Brandon to leave class and go to the office. The trial judge noted inconsistencies in

8

student JaCorey Glaude's testimony, but stated that "he indicated that he actually could hear profanity and that the coach grabbed Brandon Boone and there was not a push." The final student eyewitness, Natasha Berry, according to the trial court, had no independent recollection of the event, but had indicated in a statement taken earlier that Brandon refused Mr. Reese's request that he walk and that Mr. Reese touched his arm.

The trial judge determined that a confrontation occurred in response to Brandon's improper behavior toward his teacher. The trial court found that it was more probable than not that some physical contact did occur between Mr. Reese and Brandon.

In finding that neither the Calcasieu Parish School Board nor Mr. Reese were liable for any damages the plaintiff or Brandon may have incurred, the trial judge further stated as follows:

> Now, to the extent of that removal [of Brandon from class] the Court must review whether or not a harmful or offensive contact with that person did occur. Was there an act by Coach Reese that was intended to cause the plaintiff to suffer a harmful or offensive contact such as a battery? The intent to which tort liability is concerned is not necessarily a hostile intent or a desire to do any harm, rather it is an intent to bring about a result which will invade the interest of another in a way the law forbids. As indicated, schools have an obligation to all children in their charge, and there are occasions when it is necessary for school personnel to administer discipline in order to fulfill the obligation. Mrs. Miller even gave specific examples of breaking up fights and other circumstances in which it is imperative for school employees to physically make contact with the children in their care.
>
> It is the Court's opinion that Coach Reese's contact with Brandon Boone to remove him from the classroom after he failed to comply with his instructions does not meet the definition of a battery.
>
> Coach Reese was obligated to maintain the discipline in his classroom when confronted and his requests were ignored. His actions in this Court's opinion were not excessive. They were necessary to maintain control of the classroom and cannot be considered as invading the interest of Mr. Brandon Boone in a manner that would be forbidden by law.

9

The trial judge clearly considered the testimony and credibility of each eyewitness in its reasons for judgment. Where there are conflicts in testimony, as here, the fact finder's determinations regarding the credibility of the witnesses are accorded great deference. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). Our review of the record reveals no manifest error in the trial court's decision that Mr. Reese's actions in making physical contact with Brandon were necessary and reasonable in degree. We find that the record supports the trial court's determination that Mr. Reese was not unreasonable in his attempt to maintain order in his physical education class. Accordingly, we conclude that the trial court was not clearly wrong in determining that, although Mr. Reese's action had satisfied the "contact" element of a battery, his contact with Brandon did not meet the definition of a battery. Therefore, this assignment is without merit.

*Recusal of Trial Judge*

For her final assignment, the plaintiff asserts that the trial judge is retired from the Calcasieu Parish School Board, a defendant herein. According to the plaintiff, the judge had a close affiliation with the defendants, creating a conflict which required the judge to recuse himself from the matter.

Louisiana Code of Civil Procedure Articles 151, et seq. govern the procedure for the recusal of a judge. Article 152 provides a procedure for a judge's self-recusal, while Article 154 details the method for a party seeking a recusal, providing:

> A party desiring to recuse a judge of a district court shall file a written motion therefor assigning the ground for recusation. This motion shall be filed prior to trial or hearing unless the party discovers the facts constituting the ground for recusation thereafter, in which event it shall be filed immediately after these facts are discovered, but prior to judgment. If a valid ground for recusation is set forth in the motion, the judge shall either recuse himself, or refer the motion to another judge or a judge ad hoc, as provided in Articles 155 and 156, for a hearing.

10

Our examination of the record reveals that a motion for recusal was not made with the trial court in accordance with La.Code Civ.P. art. 154. Because the plaintiffs failed to raise this objection, it was not preserved for appeal. *See Campbell v. National Union Fire Ins*. Co., 92-592 (La.App. 3 Cir. 12/7/94), 647 So.2d 569. Thus, this assignment is without merit.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this proceeding are assigned to the plaintiff, Ms. Vickie Boone.

**AFFIRMED.**