# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 06-1120


PURVIS TOUCHET

VERSUS

MARK HAMPTON


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20031894
HONORABLE JULES D. EDWARDS, III, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## MARC T. AMY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Marc T. Amy, J. David Painter, and James T. Genovese, Judges.

**REVERSED AND REMANDED.**


**W. Alan Lilley**
**109 Stewart Street**
**Post Office Drawer 3563**
**Lafayette, LA 70502**
**(337) 261-3167**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Mark Hampton**

**Carrol L. Spell, Jr.**
**Post Office Box 249**
**Milton, LA 70558**
**(337) 857-9772**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Purvis Touchet**

AMY, Judge.

The plaintiff filed a claim for battery, alleging that the defendant physically accosted him at his place of employment. At the close of the plaintiff's case, the defendant moved for an involuntary dismissal. The plaintiff appeals the trial court's granting of the motion. For the following reasons, we reverse and remand.

### Factual and Procedural Background

The plaintiff, Purvis Touchet, was a sales manager at Hampton Mitsubishi, a car dealership owned by the defendant, Mark Hampton, for approximately three years. Touchet testified that he briefly left his employment with the dealership but subsequently returned to his former job position. He testified that his employment was terminated during the summer of 2002.

According to Hampton, the parting was amicable. However, he testified that in October 2002, he received a telephone call from Touchet in which "he basically was sort of making fun of our business because our business had gone down." Hampton stated that he hung up the telephone and that Touchet called back later that day. Hampton did not speak with him. Hampton testified that when he spoke with Touchet again, Touchet cursed him, threatened him, and told him that he knew where he lived. According to Hampton, Touchet continued to call and when he did not answer, Touchet left him several threatening voice mail messages, three of which were left on October 13, 2002.[1]

---

[1] A transcript of the messages was entered into evidence:

Saved Message - Sunday, October 13 @ 2:41 p.m.

Let me tell you what you f--king sorry a-- bastard, I'm coming for your f--king head. When I get to J.P., JP Thibodeaux, I am going to f--king murder your a--, you heard me, you mother f--ker. You f--king piece of s--t. You are nothing but a piece of s--t, you heard me Mark Hampton. You ain't nothing but a piece of s--t.

Saved Message - Sunday, October 13 @ 2:45 p.m.

Hampton testified that on October 19, 2002, he went to Jackie Edgar RV Center, Touchet's place of employment, "[b]ecause it was a public place, and I felt it was the safest place to talk to him." Touchet was not there. According to Hampton, he returned to Jackie Edgar RV Center on October 22, 2002 to "tell [Touchet] to quit harassing me and to ask him to stop calling me." Hampton asked if Touchet was in, and someone pointed him towards Touchet's office. Hampton testified that when he entered Touchet's office, Touchet, whose back was to Hampton, quickly turned around in his chair and yelled "F[--k] you, Hampton." Hampton stated that he was startled and scared because it appeared as if Touchet "was going to hit me, what he said he was going to do." Hampton testified that he defended himself by hitting Touchet. Although he did not know how many times he hit Touchet, Hampton surmised that the incident lasted approximately twenty seconds before Touchet's co-worker, David Raggette, intervened and pulled Hampton off Touchet. Hampton immediately left the premises.

Touchet filed suit against Hampton, seeking damages for "medical expenses, physical pain and suffering, mental anguish and humiliation." A bench trial was held on May 31, 2005. At the close of Touchet's case, Hampton moved for an involuntary dismissal "on the issue[s] of consent and self-defense[.]" The trial court granted the

---

You piece of s--t. You can't f--k with me you hear me you a--hole. You can't f--k with me. I'm gonna get you you a--hole. I'm gonna call every mother f--ker, every f--king mother f--ker, Crescent, I'm gonna f--k with you, you hear me you a--hole. Anytime you want to f--k with me, let me know you f--king ignorant bastard.

Saved Message - Sunday, October 13 @ 2:48 p.m.

You ain't nothing but a piece of s--t you a--hole. But let me tell you what, I can call Bank One. I'm calling Crescent, I'm calling everybody. I want your f--king a-- on a platter you hear me you a--hole. Come on. Let's me and you, come meet me somewhere you f--king piece of s--t. You ain't nothing but a piece of s--t, you heard me.

2

motion. Touchet appeals, asserting the following assignments of error:

[1]     The trial court erred in granting defendant/appellee's motion for involuntary dismissal.

[2]     The trial court erred in placing the burden of proof on plaintiff/appellant to preclude self[-]defense on the part of defendant/appellee.

[3]     The trial court erred in finding that defendant/appellee acted in self[-]defense.

**Discussion**

*Involuntary Dismissal*

Touchet argues that he "proved by a preponderance of the evidence that [Hampton] committed a battery on the date alleged, causing injury to [him]. It was manifest error to require [Touchet] to prove that [Hampton] did not act in self[-]defense." He also argues that "[t]he trial court erred in finding that defendant/appellee acted in self[-]defense."

Louisiana Code of Civil Procedure Article 1672(B) states:

In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

"The trial court is granted much discretion in determining whether to grant an involuntary dismissal." *Boone v. Reese*, 04-979, p. 5 (La.App. 3 Cir. 12/8/04), 889 So.2d 435, 438 (citing *Kite v. Carter*, 03-378 (La.App. 3 Cir. 10/1/03), 856 So.2d 1271). "The trial court's grant of an involuntary dismissal is proper if, after weighing and evaluating all of the evidence that has been presented by the plaintiff, the trial court determines that the plaintiff has failed to prove his claim by a preponderance

3

of the evidence." *Id*. at 439. The granting of an involuntary dismissal is reviewed under the manifest error standard of review. *Id*.

In granting Hampton's motion for involuntary dismissal, the trial court explained:

> The plaintiff has testified that he threatened the defendant's person; he threatened the defendant's business. The defendant testified he was fearful when in the presence of the plaintiff on the date of this altercation.

> The two witnesses the plaintiff provided today, their testimon[ies were] that they did not see the defendant -- I stand corrected -- they did not see the plaintiff threaten or make any threatening moves towards the defendant. They did not testify that, in fact, the plaintiff did not make any threatening moves towards the plaintiff -- towards the defendant.

> I am going to grant [the] defense motion for directed verdict [sic].

> The plaintiff has failed to present sufficient evidence to cause me to believe that this was not an action of self-defense.

In *Landry v. Bellanger*, 02-1443, p. 6 (La. 5/20/03), 851 So.2d 943, 949 (quoting *Caudle v. Betts*, 512 So.2d 389, 391 (La.1987)), the supreme court defined a battery as a "harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact. . . " In order to succeed on his battery claim, Touchet must prove "all prima facie elements of the tort, including lack of consent to the invasive conduct." *Id*. at 954.

In his brief submitted to this court, Hampton argues that Touchet did not carry his burden of proving that a battery occurred. Hampton alleges that Touchet consented to the altercation when Touchet left him a message telling him to "meet me somewhere you f--king piece of s--t." Additionally, Hampton contends that Touchet's actions on the day of the altercation, *i.e.*, Touchet quickly turning around in his chair, yelling an obscenity, and moving as if to hit him, constituted consent.

4

In *Cole v. State, Dep't of Public Safety and Corrections*, 01-2123, p. 11 (La. 9/4/02), 825 So.2d 1134, 1142 (citations omitted), the supreme court held that "consent in Louisiana operates as a bar to recovery for the intentional infliction of harmful or offensive touchings of the victim. Consent may be expressed or implied; if implied, it must be determined on the basis of reasonable appearances."

At trial, defense counsel reminded Touchet that in the "Request for Admissions," he admitted that prior to this incident, he had threatened to do physical harm to Hampton. Touchet acknowledged that he "invited Mark Hampton to meet [him] anytime, anyplace so that [he] could beat [Hampton's] a--[.]" However, Touchet testified that his "invitation" to meet him was for that particular day and that he did not know Hampton was coming to his place of employment on October 22, 2002. Touchet stated that he was informed of Hampton's arrival immediately prior to Hampton entering his office. Furthermore, upon learning of Hampton's presence, Touchet continued to perform his job duties at his desk with his back to the door.[2] Touchet testified that it was only when Hampton opened the door that he turned around in his chair. According to Touchet, when Hampton began hitting him, he asked, "What are you doing, Mark?" He attempted to cover his face.

However, despite Hampton's arguments in brief, we note that the trial court did not address whether the essential elements of battery were satisfied, but instead only addressed the issue of self-defense. As we ultimately have no determination by the trial court on the issue of consent to review, we, like the trial court proceed to the

---

[2] Touchet stated that he thought Raggette was joking when Raggette told him that Hampton was there.

question of whether self-defense has been demonstrated on the evidence presented by Touchet.[3]

To escape liability for damages resulting from a battery, the defendant may prove that "his actions were privileged or justified, such as self-defense." *Landry*, 851 So.2d at 954. The defendant's actions can be justified as self-defense if there was an actual or reasonably apparent threat to his safety and the force employed was not excessive in degree or kind. *Id*. "The privilege of self-defense is based on the prevention of harm to the actor, not on the desire for retaliation or revenge, no matter how understandable that desire." *Id*. at 955.

At trial, Hampton testified that he felt threatened by the messages that Touchet had left on his voice mail. Hampton stated that he went to Jackie Edgar RV Center to tell Touchet to stop harassing and calling him. According to Hampton, when he entered Touchet's office, Touchet quickly turned around in his chair, yelled an obscenity at him, and began to rise from his chair. Hampton testified that he was scared that Touchet would carry out his threats; therefore, he struck Touchet.

In *Morneau v. American Oil Co.*, 272 So.2d 313, 316 (La.1973) (quoting *Richardson v. Zuntz*, 26 La.Ann. 313 (1874), the supreme court held that "mere words, even though designed to excite or irritate, cannot excuse a battery." This holding was reiterated in *Landry*, 851 So.2d at 950 (quoting *Munday v. Landry*, 51 La.Ann. 303, 25 So. 66 (1899)), where the supreme court explained that "[w]ords written or spoken some time prior will not justify a physical attack upon the one by whom they were written or spoken." Therefore, neither the messages that Touchet

---

[3] We note that in *Landry*, 851 So.2d at 953, the supreme court held that "the aggressor doctrine no longer has a place in Louisiana tort law." Nonetheless, if Touchet is deemed to have provoked Hampton, the court can take this factor into consideration in determining percentages of fault under La.Civ.Code art. 2323. *Id*.

left on Hampton's voice mail nine days prior to the altercation nor Touchet allegedly yelling, "F[--k] you, Hampton" immediately before he was struck, seem to justify Hampton's physical attack on Touchet. *See Butler v. Paciera*, 483 So.2d 1190, 1191 (La.App. 4 Cir. 1986) (where the court held that the "defendant's conduct cannot be justified on the theory he was provoked by the vulgar epithet hurled at him by plaintiff.")

Furthermore, all of the witnesses, with the exception of Hampton, testified that Touchet did not make any threatening moves toward Hampton when Hampton entered his office. At trial, Touchet testified that on the day of the incident, he was sitting at his desk and Hampton "came through the door real quick[.]" He described what transpired:

> [H]e came around and he said something like I'm going to kill you. Okay. And he just looked so mad at me. You know, and I was sitting so low.

> And then when I turned around like that, he just started -- he came on me and he hit me . . . a couple of times. And then I hollered, "What are you doing, Mark?"

> . . . .

> And by that time Dave [Raggette] came in and grabbed him . . . and pulled him to the far corner of the office. . . . And then Dave lost him from there, and he reached over the desk and grabbed me from the back of the shirt and pulled me, not over the desk but on top the desk and was hitting me again.

> Then Dave finally got a good hold on him and kind of like picked him up . . . and walked him out to the hall.

Touchet maintained that he did not get out of his chair, make any threatening moves, or say anything before he was struck.

At trial, Touchet entered into evidence the deposition testimony of David Raggette, his former co-worker at Jackie Edgar RV Center, in which he recalled the

events of October 22, 2002. Raggette stated that his office was across from Touchet's office and that the offices had glass walls. He testified that he was in his office with some customers when he saw Hampton pull up in the parking lot. "And then the next thing you know, Mark Hampton just walked straight into the building, walked into our sales manager's office and closed the door and just -- he started hitting on Purvis Touchet."[4] Raggette testified that he ran to Touchet's office and pulled Hampton off Touchet. Hampton then left the building.

Raggette stated that he did not know if Touchet yelled anything at Hampton when Hampton walked into his office. He testified that Touchet was sitting at his desk when Hampton walked in, and Touchet appeared to cover his head and put it on his desk. According to Raggette, Touchet was unable to get out of his chair because "Hampton was on top of him."

Stacy Duhon testified that on October 22, 2002, she and her husband were shopping for a camper at Jackie Edgar RV Center. She stated that she was in Raggette's office while he was preparing a quote on a camper.[5] Duhon testified that when Hampton drove up, Raggette informed Touchet of his arrival. According to Duhon, Hampton "just walked around the corner or the edge of the office that I was in, and he went straight into the office to where [Touchet] was sitting." Duhon testified that Hampton hit Touchet, and Raggette subsequently pulled Hampton out of the office.

_____

[4] On cross examination, however, Raggette admitted that he did not see when Hampton first hit Touchet. Rather this was brought to his attention by the customer in his office. Raggette explained that "[s]he actually said, 'He's hitting him.' And that's how -- when I jumped up and went around, you know, the desk to the office."

[5] Her husband had gone to the bathroom before the incident occurred.

Upon further questioning, Duhon testified that she did not see Touchet make any threatening moves toward Hampton before he was struck. Nor did she hear him yell at Hampton before he was hit. Duhon explained that Touchet started to rise from his chair but could not because Hampton had already hit him.

Given the circumstances, we find that the record does not support a determination that there was "an actual or reasonably apparent threat to [Hampton]'s safety." *Landry*, 851 So.2d at 955. Recall that the incident happened approximately nine days after Touchet left Hampton those messages. Hampton unexpectedly arrived at Touchet's place of employment, and Touchet was only aware of Hampton's presence a few minutes prior to the altercation. Additionally, Raggette and Duhon corroborated Touchet's testimony that he did not make any aggressive moves towards Hampton and, in fact, Touchet was unable to stand before Hampton struck him.

Even assuming arguendo that Touchet did make a threatening move towards Hampton, Hampton could have immediately left the premises. Instead, Hampton repeatedly struck Touchet and had to be pulled off of him. We note that in *Landry*, the supreme court explained that if the defendant used excessive force in repelling an actual or apparent threat to his safety, his self-defense claim could not stand. Here, Hampton hit Touchet while Touchet was still sitting at his desk. The record indicates that Touchet never struck Hampton, but instead tried to protect himself by covering his face. *See Brasseaux v. Girouard*, 269 So.2d 590 (La.App. 3 Cir. 1972), *writs denied*, 271 So.2d 262 (La.1973) (where this court held that when the defendant repeatedly shot the unarmed plaintiff, who was trying to protect his face with his hands, from a distance of thirty-five feet, he employed excessive force; therefore, he did not act in self-defense); *Coludrovich v. Hess*, 407 So.2d 4 (La.App. 4 Cir. 1981)

9

(where the court held that the defendant was not acting in self-defense when he was on top of the defendant beating his head against a brick floor) Likewise, we find that Hampton's repeated hitting of Touchet does not demonstrate self-defense.

For these reasons, we conclude that the trial court's granting of Hampton's motion for involuntary dismissal on the issue of self-defense was manifestly erroneous. Nevertheless, we note that on remand, Hampton will have the opportunity to present additional evidence.

## DECREE

For the above reasons, we reverse the judgment of the trial court dismissing the plaintiff's suit, overrule the granting of the motion for involuntary dismissal, and remand the case to the trial court for further proceedings. All costs of this proceeding are assessed against the defendant, Mark Hampton.

**REVERSED AND REMANDED.**