GUIDRY, Judge.
This is a custody matter. On November 19, 1975, Pamela Harper was granted a separation from bed and board from her husband, Kirk A. Boudreaux. The judgment awarded custody of the parties’ minor child, Shaun, to Harper with visitation rights in favor of Boudreaux. On September 22, 1977, a judgment of divorce was *649 granted and custody of the minor child was continued in Harper with fixed visitation rights being granted to Boudreaux.
On July 17, 1980, Boudreaux filed a rule to change custody, and in the alternative, he sought amendment of the previously fixed visitation rights. The basis for the aforesaid rule was that Harper had allowed the child to live with her parents and to attend school in Many, Louisiana, while Harper resided approximately 45 minutes away in Milam, Texas. In a judgment dated November 18,1980, the trial court denied Boudreaux’s demand for a change of custody. However, the court at that time did set the following visitation rights in favor of Boudreaux:

“Two (2) months each summer during the months of June and July; alternate Christmas and Thanksgiving holidays beginning with Christmas of 1980, December 24 to December 30, 1980, and; during the remaining months of each year, one weekend each month to begin on Friday evenings at 4:30 p. m. and ending Sunday evenings at 4:30 p. m., the first such visitation to be Friday, November 14, 1980.”

On March 13, 1981, Boudreaux filed the instant rule for change of custody, and additionally, petitioned the court to hold Harper in contempt for the denial of his visitation rights as previously fixed. On April 7, 1981, Harper answered Boudreaux’s rule and filed a cross-rule requesting that the trial court terminate Boudreaux’s visitation rights on the grounds that Boudreaux had abused the parties’ minor child during prior visitations and had used marijuana and other drugs in the presence of the minor child.
After hearing extensive testimony and reviewing a report prepared by a psychologist who interviewed the parties, the district court concluded that the custody of the parties’ minor son should be maintained with his mother, Pamela Harper.[1] The trial court also concluded that the court’s prior order setting forth the visitation rights of Boudreaux should be maintained with the modification that for a one year period, Boudreaux’s visitations with his minor son should be supervised by the child’s paternal grandmother, Mrs. Leonard Kern. Presumably, Boudreaux’s motion for contempt was denied as the judgment rendered is silent in this regard. Harper appeals from the decision of the trial court. Boudreaux has neither answered the appeal nor appealed from the aforesaid judgment.
The sole issue on appeal is whether or not it is in the best interest of the parties’ minor child to continue visitation rights in favor of the child’s father as ordered by the trial court.
At trial, Harper testified generally as follows: The dispute regarding the custody of the parties’ minor son, Shaun, began subsequent to the filing by Boudreaux of his initial rule to change custody. Thereafter, Shaun began to refuse to visit with his father and became very upset when he learned that his father intended to pick him up and take him to his home in New Iberia, Louisiana. The child repeatedly informed his mother that he was afraid that his father would “trick him”. Harper informed Boudreaux that she would not force the child to go with him on such visits. Bou-dreaux’s attempts at exercising his visitation rights often ended in profane verbal exchanges between the parties. Various threats of physical harm were exchanged between G. E. Harper, plaintiff’s father, and Boudreaux. Such threats culminated in a physical confrontation between Mr. Harper and Boudreaux outside of the Sabine County, Texas courthouse in March of 1981. Other incidents occurred during the young child’s visitations with his father. One such incident involved Boudreaux’s girlfriend, who zipped the child into a suitcase for a few seconds as punishment for misbehavior. Boudreaux was arrested and convicted in Texas for possession of marijuana and the illegal possession of a firearm shortly after attempting to pick the child *650 up for a visit. Boudreaux’s past involvement with drugs and firearms as well as his prior mistreatment of the parties’ minor child convinces Harper that to continue visitation rights in favor of Boudreaux would be detrimental to Shaun.
Boudreaux admitted his conviction for possession of marijuana and the illegal possession of a firearm, but testified that the aforesaid conviction occurred three to four years prior to the instant hearing. Although conceding his past use of marijuana, Boudreaux stated that he no longer uses illicit drugs of any type. Boudreaux testified extensively regarding his thwarted attempts at exercising his visitation rights as ordered by the trial court. In this regard, he stated that when he attempted to exercise such rights, the young boy appeared to be afraid of him and repeatedly referred to his fear of being “tricked” by his father. Boudreaux testified that Harper refused to aid him in allaying the boy’s fears and refused to encourage the child to develop and establish a positive relationship with him. Boudreaux admitted that his girlfriend had zipped the child into a suitcase for a few seconds because the child had similarly mistreated some young puppies, however, Boudreaux stated that he does not condone such punishment. Boudreaux expressed a sincere desire to establish a meaningful relationship with his son via regular visitations.
The young child, Shaun, was briefly questioned by the trial judge in chambers during the hearing. His testimony is somewhat confused, however, he repeatedly stated that he did not like to visit his father because “they caught him with all those guns and dope and I don’t want to be around guns and dope, not that stuff.” The child also indicated that he wanted to remain with his mother and that he had mixed feelings regarding visiting his father.
In September, 1981, Dr. Kenneth R. Bouillion, a clinical psychologist, interviewed and performed psychological testing with the parties and their minor son, Shaun. After such interviews and testing, Dr. Bouillion concluded that Shaun’s statements and fantasies about dope, guns, etc. were fostered by his mother and his maternal grandparents to increase the child’s fear of his father. Dr. Bouillion recommended that Shaun resume visits with his father under controlled circumstances. He suggested that such visits occur outside of the presence of Shaun’s mother or any of her family members. In addition, Dr. Bouillion recommended to the court that the child’s visitations with his father be conducted in a setting in which some third party is present for supervision purposes. Dr. Bouillion indicates in his report that under such circumstances there exists the possibility that Shaun can resume a more normal relationship with his father.
Harper contends that the trial court erred in concluding that it was in the best interest of the parties’ minor child to continue visitation rights in favor of Boudreaux. We disagree.
The record clearly reflects the extreme diligence of the trial court in its attempt to determine that action which would be in the best interest of the minor child, Shaun Bou-dreaux. In so doing, the court noted that in its interview with the minor child, the child appeared to be well-coached in his answers. Our review of the record reflects that the child has obviously been adversely influenced by his mother and her parents in regard to his attitude towards his father. The aforesaid parties have openly berated Boudreaux in front of the child and have instigated profane verbal exchanges with Boudreaux in the child’s presence. During the trial court’s brief interview with Shaun, the young boy professed to have knowledge of his father’s possession of drugs when such knowledge on the part of the child was impossible. In addition, we are somewhat perplexed, as was the trial court, as to why Shaun did not appear to have reservations about visiting his father until after the initial change of custody suit was filed. As noted by the trial court, the child’s stories regarding incidents which allegedly occurred while he was visiting his father are somewhat incredible. The child’s statements clearly indicate that he has been *651 significantly influenced by Ms. Harper and her parents in his negative relationship with his father.
Ms. Harper avers that Boudreaux does not sincerely care about the parties’ child. In support of this contention, Harper argues that Boudreaux has made no attempt to visit or communicate with the child since March of 1981. However, as the trial judge noted while making his initial observations regarding the matter, the record clearly indicates that Boudreaux was justified in assuming that any such effort would be fruitless in view of the extremely hostile climate created by Harper and her parents.
Finally, Harper argues that Boudreaux’s involvement with marijuana, particularly, smoking the drug in the presence of the child, is more than sufficient grounds for the termination of Boudreaux’s visitation rights.
In Reavill v. Reavill, 370 So.2d 175 (La.App. 3rd Cir. 1979), our court stated:
“It is well settled that the paramount consideration in determining visitation rights following a divorce is the welfare of the child. Johnson v. Johnson, 357 So.2d 69 (La.App. 4 Cir. 1978). As such, the trial court is vested with a broad discretion in its award of visitation privileges to a parent. Spencer v. Spencer, 273 So.2d 605 (La.App. 4 Cir. 1973). One of the questions in considering an award of visitation rights is whether the emotional stability of the child will be affected. In making such determination, much discretion is afforded the trial court in its structuring of the times and conditions of visitation, and the general rule is that a decision will not be disturbed unless there has been evidence of an abuse of the trial court’s discretion. Pate v. Pate, 348 So.2d 1338 (La.App. 3 Cir. 1977).”
In the present case, the trial judge stated in his written reasons for judgment, that it was his belief that the problems which exist between the child and his father are due largely to the animosity which exists between the mother and her parents on the one hand and the father on the other. The trial judge noted that Ms. Harper’s testimony clearly indicates that she feels no obligation to make any effort in changing the child’s present negative view and attitude towards his father to a more positive one. The trial court concluded that it is in the best interest of the minor child to permit his father to visit with him and to provide Boudreaux with the opportunity to re-establish a positive relationship with his son.
Our review of the record indicates that the trial court adequately and reasonably weighed the pros and cons of continuing Boudreaux’s visitation rights. In this regard, the trial court took particular note of Boudreaux’s prior use of illicit drugs as well as his past criminal record. In consideration of Boudreaux’s past activities, the trial court deemed it essential that a third person be involved in the visitation process “to reassure the child and to be certain that the child is handled with the greatest of tenderness and care.” Thus, the trial court ordered that the child’s paternal grandmother, Mrs. Leonard Kern, should accompany Boudreaux during all of his visitations with his son.
We conclude that the impact of the evidence introduced is that the best interest of the child dictates that Boudreaux be allowed to visit with his son and attempt to re-establish a positive relationship with him. We are convinced by the record that the trial court adequately considered all of the evidence and testimony, and thereafter, provided for a reasonable resolution to the present dispute. Thus, we discern no error on the part of the trial court in continuing visitation rights as provided for in the trial court’s order dated November 18,1980, with the modification that for a one year period, Boudreaux’s visitations with his son shall be supervised by the child’s paternal grandmother.
In the alternative, Harper contends that the trial judge erred by refusing to substantially limit Boudreaux’s visitation rights and by further refusing to provide that the supervision of such visitations shall be the responsibility of some objective third party, specifically, a local probation officer *652 or employee of the Division of Family Services. In this regard, Harper argues that the record reflects that Mrs. Kern is unsuitable to monitor such visitations. Harper avers that Mrs. Kern was unaware of her son’s past drug problems, therefore, she would, in all probability, be oblivious of any future drug problem. In addition, Harper contends that Mrs. Kern has been guilty of mistreatment of the minor child in the past as evidenced by the child’s own statements. We do not find these contentions to be supported by the record. Mrs. Kern’s testimony indicates a genuine concern for the welfare of her grandchild. Her testimony reflects her strong disapproval of drug use and the record is devoid of any persuasive evidence regarding her alleged mistreatment of the young boy. After carefully reviewing the record, we can find no evidence that the trial court manifestly erred in concluding that supervision by the young boy’s paternal grandmother of the visitations between him and his father would sufficiently safeguard the physical, moral, and emotional welfare of the minor child. See Gowins v. Gowins, 391 So.2d 48 (La.App. 3rd Cir. 1980); Reavill v. Reavill, supra.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to plaintiff-appellant, Pamela Harper.
AFFIRMED.

. The report of Dr. Kenneth R. Bouillion was admitted in evidence pursuant to stipulation of the parties.