494 So.2d 1315 (1986)
Joyce Ann Fontana DAVIS, Appellee,
v.
Joseph Randolph DAVIS, Appellant.
No. 18035-CA.
Court of Appeal of Louisiana, Second Circuit.
September 24, 1986.
*1316 Touchstone & Wilson by David M. Touchstone, Shreveport, for appellant.
Glen H. Smith, Shreveport, for appellee.
Before HALL, SEXTON and NORRIS, JJ.
NORRIS, Judge.
Appellant, Joseph Randolph Davis, appeals a lower court judgment on a rule to show cause filed by him against his former wife, now Mrs. Joyce Ann Morgan, requesting that he be relieved of the obligation to pay child support, allowed to correspond with his two minor children, and that his children be allowed to visit with him every other weekend at the Texas prison where he is incarcerated after being convicted for rape of a child. The trial court dismissed the child support issue because the divorce decree did not order Davis to pay child support; allowed Davis to write his children one letter per month, four pages in length, with the decision of replying to his letters being left to the children; and denied Davis's request to have his children brought to the Texas prison to visit with him every other weekend. Mr. Davis appeals this ruling to the extent that it denies him visitation and limits correspondence between him and his children.
We affirm the decision of the trial court insofar as it denies Mr. Davis visitation at this time, and amend it to remove the restrictions on his correspondence.
Joyce Ann Fontana and Joseph Randolph Davis were married October 9, 1974. Two children were born of the marriage, Ashley Ann Davis, on June 14, 1975, and Joseph Readus Davis, on November 16, 1977. At the time of the hearing on the rule they were ten and seven years old, respectively.
On November 9, 1983 the Davises obtained a judgment of separation based on mutual fault that awarded them joint custody of their minor children. The mother was given actual physical custody of the children, subject to the father's liberal visitation as set forth in the judgment.
Subsequent to that time, Mr. Davis was convicted of the rape of a twelve year old girl who was a friend and frequent babysitter of his two children. Mr. Davis was *1317 sentenced to twenty five years at hard labor and has been in the Huntsville, Texas penitentiary since June of 1984.
On June 5, 1985 Mrs. Davis was granted a divorce in a decree which awarded her the permanent care, custody and control of the two minor children, subject to Mr. Davis's "reasonable rights of visitation," and which reserved to Mrs. Davis her rights to receive child support.
At the trial of the instant rule, Mr. Davis was not present to testify. However, there is considerable evidence in the record that Mr. Davis was a good father prior to his conviction. He had received a BA in business from Louisiana Tech, and had been branch manager of a bank for fifteen years before going into business for himself. Mrs. Morgan testified that during the last year or so of their marriage, Mr. Davis had a close relationship with the children. After the separation, before being incarcerated, he would visit the children approximately three days a week. He has not seen the children since he has been in jail.
Mr. Davis's sister, Johnette Scoggin, and her husband, James Scoggin, visit her brother regularly in Huntsville. At the time of the hearing they had been there ten or eleven timessomewhat less than once a month. It is a four and one-half hour drive to Huntsville. They drive down on Friday, stay the night at a friend's motel for free and drive back on Saturday after visiting with Davis. The Scoggins have four children between the ages of 9 and 17, and regularly take one or more of them to visit their uncle. They both testified that they saw no ill effects on their children as a result of the visits. The Scoggins would be willing to take the Davis children down with them at no cost to either appellant or Mrs. Morgan. It is through their help that Mr. Davis intended to implement his visitation plan.
The Scoggins testified that the visitation takes place in one large room, with a clear acrylic sheet and steel mesh wire between the prisoners and visitors. No physical contact is possible. Mr. Davis is allowed to receive visitors for four hours every two weeks, on a Saturday or Sunday.
Mrs. Morgan is opposed to the proposed visitation. She testified that the children did not answer the letters they received from their father, and have never expressed any desire to visit him. When Mrs. Morgan offered to take the children to visit their father one Christmas when he was incarcerated in a small town, the children refused. Mrs. Morgan testified that the children do not like to talk about their father's conviction and have been very upset about it. She opposes having the children visit their father because she believes that it would upset them to see him at this time and to be constantly reminded of the case. She also fears that the prison would not be a good atmosphere for the children.
In his brief, Mr. Davis asserts that the original award of joint custody is still in effect and should be enforced by allowing him the visitation he has requested. However, the judgment of divorce entered on June 5, 1985 awarded the mother the permanent custody of the children, allowing Mr. Davis only reasonable visitation rights, not custody. The trial court obviously found that joint custody would not be in the best interests of the children, overcoming the LSA-C.C. art. 146 presumption. The judgment denying joint custody was not appealed. This subsequent decree superseded the original award of custody. Fountain v. Fountain, 365 So.2d 1139 (La. App. 3d Cir.1978).
The issue before this court is whether the trial court abused its discretion in denying the visitation requested. In visitation cases, great weight is to be given to the trial court's determination, which will be overturned only when there is a clear abuse of discretion. Pate v. Pate, 348 So.2d 1338 (La.App. 3d Cir.1977); Edelen v. Edelen, 457 So.2d 171 (La.App. 2d Cir. 1984); Harper v. Bordreaux, 415 So.2d 648 (La.App. 3d Cir.1982). The sole criterion for determining the noncustodial parent's visitation privileges is the child's best interests. This is determined on a case by case basis, with each individual case dependent *1318 on its own facts. Edelen v. Edelen, supra; Phelps v. Phelps, 258 So.2d 112 (La.App. 2d Cir.1972).
We concur with the trial court in finding that at this time biweekly visitation with their father in a penitentiary would prove traumatic for children of their tender years, especially in light of the distance that must be traveled, the recentness of his conviction, and the relationship of these children with the twelve year old girl whom their father was convicted of raping. The visitation requested would require these two young children to travel four and one-half hours to and from the penitentiary twice a month to visit with their father through an acrylic and wire barrier for four hours. The children are frightened and confused, and have expressed their desire not to visit with their father after his conviction for raping a girl who was their friend and babysitter. We cannot say that the trial court abused its great discretion in concluding that at this time the children's best interests would not be served by allowing such visitation. However, we do not mean to imply that the father has forfeited his right of visitation. It is more akin to a suspension of the father's visitation privileges until such time as it would be easier for the children to cope with the strain inherent in this situation. In denying visitation at this time, but allowing the father to correspond with the children, we believe the trial judge has attempted to provide a means for the father to re-establish a relationship with the children gradually. Hopefully time and circumstances will alter the situation to an extent where limited visitation will prove acceptable, but at this time and under these particular circumstances the trial court's suspension of visitation does not amount to an abuse of discretion.
There is nothing in the record that indicates the children would be injured in any way by receiving letters from their father, regardless of their length and frequency. It is to the benefit of both the children and the father that they begin to re-establish their relationship. Accordingly, we amend the judgment of the court below to allow Mr. Davis to correspond freely with his children. We urge Mrs. Morgan to encourage them to reply to the letters.
Paragraph three of the judgment is amended to read as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of JOYCE ANN FONTANA DAVIS MORGAN and against the defendant, JOSEPH RANDOLPH DAVIS, rejecting JOSEPH RANDOLPH DAVIS' plea for visitation with the minor children except to the extent that JOSEPH RANDOLPH DAVIS will be permitted to correspond freely with the minor children, with like correspondence from the minor children of the marriage to Mr. Davis should the children so desire.
Costs of this appeal are assessed to the appellant and appellee equally.
AMENDED and AFFIRMED.