948 So.2d 386 (2007)
Mary Evelyn SMITH, Plaintiff-Appellee,
v.
Jamie Dale SMITH, Defendant-Appellant.
No. 41,871-CA.
Court of Appeal of Louisiana, Second Circuit.
January 24, 2007.
*387 Jamie Dale Smith, in proper person.
Blackwell Cambliss by Ronald P. Camp, West Monroe, for Appellee, Mary Evelyn Smith.
Before BROWN, STEWART and CARAWAY, JJ.
STEWART, J.
Jamie Dale Smith, who is serving a thirty-year sentence for manslaughter, appeals the judgment of the district court rejecting his demand for visitation with his five-year-old daughter. We find that the child's best interest would not be served by visitation with her father at this time and affirm the trial court's judgment.

FACTS
Jamie and Mary Dale Smith were married on September 8, 2000. Their child, S.S., was born on September 28, 2000. The couple separated in January 2001, when Jamie was arrested and charged with second degree murder. A judgment of divorce was entered on October 8, 2001. Custody of their daughter has never been litigated; S.S. has remained in Mary's care. On May 20, 2003, Jamie pled guilty to manslaughter subject to a thirty-year cap on the sentence. Upon considering Jamie's criminal history, the court imposed the maximum thirty-year hard labor sentence.
In a pleading filed April 13, 2004, Jamie sought visitation with his then three-year-old daughter. He asserted that his mother had previously brought the child to visit him, but he explained she no longer did so after having moved to Texas. He also asserted that he last saw his daughter in June 2002. He petitioned the court to set a visitation schedule and order Mary to bring the child to visit him at the prison. The district court judge signed an order providing that he would work out a reasonable visitation schedule to be followed and allowing Jamie to proceed in forma pauperis.
On April 28, 2004, Jamie amended his petition for visitation to request that his mother, who was again residing in Louisiana, be allowed to bring the child to the prison for visits. There were various *388 problems with service of this matter, and nothing further was done for some time.
On November 14, 2005, Jamie filed a motion to fix visitation. He alleged that Mary frequently visited him but refused to bring their child. Again, he asked that his mother be allowed to bring the child to the prison for visits.
The trial court held a hearing on April 11, 2006, to address requests for visitation by both Jamie and his mother, Donna Moffett. Jamie was not present at the hearing. Mary testified that she was living in Lafayette while finishing her internship for a college degree in social work. She did not know where she would live after graduation, as that would depend on her employment. She stated that she had told S.S. about her father and explained that he is in jail.
Ms. Moffett testified that she had not seen S.S. in four years since her move to Texas in 2002. Much of her testimony related to her own request for visitation and is not relevant to this appeal. However, she expressed her belief that S.S. needs to know her father and his family.
The court also heard the testimony of Dr. E.H. Baker, a psychologist who interviewed Mary and S.S. for trial purposes. Dr. Baker concluded that it would be inappropriate and traumatic for S.S. to begin visiting her father. She was only five years old and had limited knowledge of him. He believed that any contact between them should begin in writing and that visits should not be allowed until S.S. expresses curiosity about her father. Dr. Baker explained that as children near puberty, they become more curious, have a better sense of self, and are able to develop their own ideas and understanding. Dr. Baker suggested that visits with the grandmother alone would be fine as long as the relationship was developed slowly and under supervision to ensure that conversations about Jamie were carefully handled.
After hearing the witnesses, the trial court judge ordered that S.S. be allowed to visit with Ms. Moffet under Mary's supervision, but he denied Jamie's request for visitation until such time as "the doctor says she reaches the age of, you know, be it adolescence when she starts questioning and asking about him."
On June 12, 2006, the trial court conducted another hearing, but it was not transcribed for the record. A minute entry indicates that Jamie was present for the hearing and filed a motion to strike parts of Dr. Baker's report because he neither visited the prison nor interviewed Jamie. The trial court again denied Jamie's request for visitation but ordered Mary to give S.S. all letters or gifts sent by him. The judgment signed June 26, 2006, further provided that Jamie may again file for visitation in two years. Jamie now appeals the denial of his request for visitation.

DISCUSSION
La. C.C. art. 136 provides, in relevant part:
A. A parent not granted custody or joint custody of a child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would not be in the best interest of the child.
Jurisprudence emphasizes that the best interest of the child is the sole criterion for determining a noncustodial parent's right to visitation. Anderson v. Brown, 34,474 (La.App.2d Cir.2/28/01), 781 So.2d 744; Duvalle v. Duvalle, 27,271 (La. App.2d Cir.8/23/95), 660 So.2d 152; and Davis v. Davis, 494 So.2d 1315 (La.App.2d Cir.1986). Because each case depends on its own facts, the determination regarding *389 visitation is made on a case-by-case basis. Davis, supra. Great weight is given to the trial court's determination, and the court's judgment will not be overturned unless a clear abuse of discretion is shown. Anderson, supra; Davis, supra.
Here, the overwhelming concern was that forcing the five-year-old child to visit her father in prison would be a harmful or traumatic experience. The trial court gave great weight to the testimony and report of Dr. Baker, who met with S.S. and observed her response to the possibility of visiting her father in prison. Dr. Baker reported that S.S. understood her father was in prison and "very quickly" indicated she would not like to visit him there. He also noted that S.S. became "visibly upset and agitated" when discussing the possibility of visiting her father. His report stated:
In my professional opinion, it would be extremely detrimental to her development to begin taking her into a prison setting in order to attempt to develop a relationship with a person whom she does not recognize as her father. She apparently has no recall of visits when she was a toddler. To place any child her age in a situation in which the child is required to begin visiting a prison would likely result in extreme distress. Children this age are very impressionable and to suddenly be thrust into a situation such as this would be exceptionally disruptive.
It was Dr. Baker's strong recommendation that S.S. not be required to visit Jamie in prison. He believed that irreparable harm would quite likely result if she was forced at the age of five to visit a prison in an attempt to establish a relationship with her father. He suggested that any contact should be in writing and that therapy should be provided to S.S. whenever she begins to visit her father in prison.
Two of Jamie's arguments pertain to the trial court's reliance on Dr. Baker's opinion that it would not be in the child's best interest to visit her father in prison at this time. He complains that Dr. Baker's report is biased, because Dr. Baker did not interview him or visit the prison to observe the conditions there, including other children visiting family in prison and the monitoring of these visits by prison officials. He claims Dr. Baker's report suggests inappropriate behavior by him in relation to his daughter and shows that she has not been told anything positive about him. He asserts that visitation is necessary for him to make S.S. understand that while he did foolish things and is being punished, he is not a bad person and neither is she.
While additional information is often helpful to the court in making decisions regarding parental visitation rights, neither a psychologist's interview with Jamie nor an inspection of visitation facilities at the prison would be determinative of whether S.S.'s best interest would be served by visiting her father in prison. The fact that other children visit family at the prison is of no relevance in this individualized determination. Additional information from Jamie or about the prison facilities would not override the concern that emotional trauma would likely result if the young child was forced to begin visiting her father, whom she does not know, in prison.
Contrary to Jamie's assertion, we find nothing in Dr. Baker's report that suggests inappropriate behavior toward his daughter. However, the report makes clear that S.S., understandably, does not have a positive view of her father. Dr. Baker's report relates that S.S. is a happy, well-adjusted young girl who does not recall her father from visits to the prison during her first two years of life. However, she knows his name, has seen his picture, *390 and knows he is in prison. She did not express any desire to meet him or visit him at the prison. Moreover, she became agitated, distressed, and less responsive when questioned about her father. Her responses and reactions when questioned about her father lead us to believe that she is clearly not ready for a personal relationship with him. Jamie's desire to explain to her that he is not bad, even though he murdered a man by inflicting 104 stab wounds, will have to wait until she is mature enough to face the facts of her father's poor choices in life.
Jamie also argues that the trial court erred in considering his conviction a factor in deciding visitation even though he was not convicted for any crime related to children or sexual offenses. We do not find that the fact of Jamie's conviction persuaded the trial court in making the visitation determination. Rather, S.S.'s best interest was the paramount concern. We also find no merit or relevance to Jamie's argument concerning the alleged reasons why Mary stopped bringing the child to visits at the prison.
In this matter, S.S.'s young and impressionable age was a major consideration in denying visits for the present. The trial court judge did not abuse his discretion in accepting Dr. Baker's recommendation that visits to the prison would be inappropriate at this time. By providing that Jamie may again seek visitation rights in two years, the trial court judge recognized, in accordance with Dr. Baker's report, that there may come a time when S.S.'s best interest will be served by visitation with her father. The current prohibition against visitation is not forever conclusive of the issue. Jamie may begin developing a relationship with his daughter by writing letters and in this way build a foundation that may lead to personal contact at an appropriate time.

CONCLUSION
For the reasons provided, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.