GRAVOIS, J.
Plaintiff/appellant, Alexander Loya, appeals the trial court's June 21, 2017 judgment that denied his Petition for Contact with Minor Biological Children. For the reasons that follow, we affirm the judgment.
FACTS AND PROCEDURAL HISTORY
Plaintiff/appellant, Alexander Loya, and defendant/appellee, Sandra Cummings Loya, were married on January 10, 1998. Of their marriage, three children were *1050 born. Their oldest child, who was born in November 1999, is now a major; their second and third children, born in 2001 and 2003, respectively, are still minors. In 2009, Mr. Loya, then a Captain in the United States Army, was convicted by court-martial of several counts of various crimes involving sexual acts with his then-minor step-daughter, K.L., who is Mrs. Loya's daughter by a previous marriage. For his crimes, Mr. Loya was sentenced to "confinement for 50 years and dismissal from the service." As part of his sentence, Mr. Loya was also prohibited from writing, visiting, or making other contact with Mrs. Loya, and from "having any contact with minor children." On or about August 26, 2010, the couple divorced.
On January 13, 2017, Mr. Loya filed a "Petition for Contact with Minor Biological Children."[1] At the time his petition was filed, Mr. Loya was incarcerated at the United States Disciplinary Barracks in Fort Leavenworth, Kansas. He is currently incarcerated in Pollock, Louisiana. In his petition, Mr. Loya averred that it was in the best interest of his minor children that he be allowed to contact them via telephone and/or U.S. mail, to send them gifts, and to have access to information and documentation pertaining to them, including but not limited to academic and athletic achievements such as report cards, standardized testing results, and any competitive awards or accomplishments. Mr. Loya requested that the court appoint a custody facilitator/parenting coordinator to arrange, facilitate, and supervise any telephone contact with the children and to receive and deliver cards, letters, and gifts to the children. He noted that he had completed the Army-sanctioned "Reason and Rehabilitation Class, Anger Management Class and Alpha Course."
Upon request of the trial court,[2] Mr. Loya filed a memorandum of law in support of his petition. In his memorandum, Mr. Loya argued that pursuant to La. C.C. art. 136,[3] he was seeking to establish *1051 a way to be part of his minor children's lives without the interference or prevention of Mrs. Loya. He also contended that La. R.S. 9:364.1, quoted infra , provided him, as an incarcerated parent, with a statutory basis for his request. Mr. Loya further relied on La. R.S. 9:351[4] to argue that at the very least, he should be provided with his minor children's medical, dental, and school records, including but not limited to extra-curricular activities.[5]
On June 14, 2017, the trial court conducted a hearing on the petition. At the hearing, Mr. Loya's attorney argued that Mr. Loya was not convicted of anything involving his three biological children at issue herein.[6] Counsel argued that Mr. Loya simply wanted contact with his children by sending cards, communicating via telephone, and/or receiving information about their health and education. Counsel further suggested that the trial court appoint someone to facilitate the contact to ensure the safety of the children. Counsel for Mr. Loya presented no witnesses and submitted no evidence at the hearing in support of his requests. His case consisted entirely of argument of counsel.
Mrs. Loya, appearing pro se , testified at the hearing and submitted exhibits in opposition to the petition. She provided that Mr. Loya has had no contact with the children since his arrest in 2009. When Mr. Loya was first sentenced, Mrs. Loya only told the children that he was accused of wrongdoing and that the court had found him guilty. She also told the children that if they wanted contact with their father, she would not stop it; however, she said that they had never brought up wanting to contact him. Mrs. Loya testified that the children are now together, healed, successful, and stable. She said that she did not want the children receiving gifts and cards from Mr. Loya, even through an intermediary, because their lives are stable and she did not want to do anything to jeopardize their current path of life.[7] She stated that Mr. Loya previously attempted contact with the children by sending several letters to Mrs. Loya's mother, requesting that she give them to the children. However, the children never saw these letters. Mrs. Loya found them in her mother's possessions after her death. Copies of the envelopes containing the letters were submitted into evidence. Mrs. Loya also submitted into evidence correspondence *1052 she received from the Army stating that Mr. Loya was prohibited from having any contact with her and "with minor children." She further submitted a copy of the General Court-Martial Order listing Mr. Loya's convictions and sentence.
Mrs. Loya further testified that her daughter, K.L., the victim of Mr. Loya's crimes, although now a major, is "extremely mentally unstable." She stated that as a minor, K.L. had been sent to juvenile court several times. Additionally, she was hospitalized twenty-five times in a period of four years as a result of the trauma she received at the hands of Mr. Loya. Mrs. Loya denied the allegations by Mr. Loya that K.L. has since recanted some of the things she testified about regarding the charges against Mr. Loya, and that K.L. said that Mrs. Loya set it up for her to make the claims against Mr. Loya.
At the conclusion of the hearing, the trial court took the matter under advisement. On June 21, 2017, the trial court rendered a written judgment denying all of the claims and relief requested in Mr. Loya's petition.[8] Written reasons for judgment were issued that same day. This timely appeal followed.
On appeal, Mr. Loya, appearing pro se , asserts in his first assignment of error (styled "Issue I" by Mr. Loya) that the trial court erred when it denied his petition based on Mrs. Loya's testimony. Though the trial court stated that it perceived Mrs. Loya to be honest, candid, and forthright, Mr. Loya argues that her statements on the record and the facts in his brief show that she was "consciously deceptive" and lied to the trial court. In support of his argument, Mr. Loya refers this Court to affidavits of Daurice Cummings Bealer and Tania Favela Loya attached to his brief.
Mr. Loya asserts in his second assignment of error (styled "Issue II" by Mr. Loya) that the trial court erred when it denied his petition based on the emotional trauma K.L. suffered, first because he denied that any abuse ever occurred, and second because the contact he presently seeks is with his three biological children, not with K.L. He argues that the suffering and emotional trauma in K.L.'s life was due to Mrs. Loya's own manipulation that caused her to accuse Mr. Loya falsely and unjustly put him in prison. He again refers to attachments to his brief as the support for his argument.
Finally, Mr. Loya asserts in his third assignment of error (styled "Issue III" by Mr. Loya) that the trial judge was "an old family friend" of Mrs. Loya and thus should have recused himself from the case, arguing that "this makes the Court appear unethical to the general public."
Mrs. Loya did not file an appellee brief with this Court.
ANALYSIS
The legal authority for visitation with incarcerated parents is found in La. R.S. 9:364.1, which provides:
A. If the court authorizes visitation with an incarcerated parent, as part of such visitation order the court shall include restrictions, conditions, and safeguards as are necessary to protect the mental and physical health of the child and minimize the risk of harm to the child.
B. A court considering the supervised visitation of a minor child with an incarcerated parent shall consider *1053 the best interest of the child, including but not limited to:
(1) The length and quality of the prior relationship between the child and the parent.
(2) Whether the child is in need of guidance, enlightenment, or tutelage which can best be provided by the parent.
(3) The preference of the child if he is determined to be of sufficient maturity to express a preference.
(4) The willingness of the relative to encourage a close relationship between the child and his parent or parents, including the willingness of the child's custodial parent, caretaker, or legal guardian to voluntarily take the child to the incarcerated parent's place of incarceration for supervised visitation.
(5) The mental and physical health of the child and the parent.
(6) The length of time that the child lived with the parent prior to the parent's incarceration.
(7) The desirability of maintaining the continuity of the relationship between the child and the incarcerated parent.
(8) The costs of travel and other expenses incurred by visitation at the place of incarceration, and who will bear responsibility for such costs.
(9) The effect upon the child of supervised visitation in the place of incarceration and the feasibility, if any, of alternative or additional use of technology for visitation pursuant to R.S. 9:357.
(10) Other testimony or evidence as the court may consider applicable.
In its written reasons for judgment, the trial court stated that it considered the provisions of La. R.S. 9:364.1 in finding that: 1) no evidence was adduced that would indicate that any contact would be in the best interest of the minor children; 2) no evidence was adduced to indicate the length and quality of the prior relationships between the father and the children; 3) no evidence was adduced to show how the father can provide guidance or enlightenment to the children; 4) no direct evidence was adduced to show the children's preference; and 5) no evidence was adduced to indicate how anything but the current arrangement of no contact would be beneficial to the children. The court found, in a nutshell, that nothing was proven to indicate that the children would benefit from granting any of the relief requested, and that the only proof adduced supported the mother's request to deny all relief. The court noted that it was impressed with the "sincerity of the mother," finding that Mrs. Loya's "trembling hands, shaking body, and wavering voice were proof positive to [the] court that she was being candid, forthright, and open in her testimony." The court ultimately found that all factors indicate that the best interests of the children would be for them to not have any contact with their father.
The best interest of the child is the sole criterion for determining a noncustodial parent's right to visitation. Dufresne v. Dufresne , 08-215 (La. App. 5 Cir. 9/16/08), 992 So.2d 579, 586, writ denied , 08-2843 (La. 12/17/08), 996 So.2d 1123 ; Smith v. Smith , 41,871 (La. App. 2 Cir. 1/24/07), 948 So.2d 386, 388, writ not considered , 07-0621 (La. 4/20/07), 954 So.2d 149. Because each case depends on its own facts, the determination regarding visitation is made on a case-by-case basis. Davis v. Davis , 494 So.2d 1315, 1317-1318 (La. App. 2nd Cir. 1986). Great weight is given *1054 to the trial court's determination, and the court's judgment will not be overturned unless a clear abuse of discretion is shown. Davis , 494 So.2d at 1317.
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell v. ESCO , 549 So.2d 840, 844 (La. 1989).
Upon review, we find that the trial court did not abuse its discretion and was not manifestly erroneous or clearly wrong in crediting the testimony of Mrs. Loya in its decision to deny Mr. Loya's Petition for Contact. Mrs. Loya testified at length at trial as to why she felt Mr. Loya's Petition for Contact should be denied. Particularly, she provided that Mr. Loya had been absent for over eight years as a result of being convicted of sexual acts involving his step-daughter (the step-sister of his children that are the subject of this matter). She further testified that the children are now together, healed, successful, and stable, and that she did not want them receiving gifts and cards from Mr. Loya, even through an intermediary, because their lives are stable and she did not want to do anything to jeopardize their current path of life. The trial court even noted in its written reasons for judgment that it was impressed with the "sincerity of the mother," finding that Mrs. Loya's "trembling hands, shaking body, and wavering voice were proof positive to [the] court that she was being candid, forthright, and open in her testimony." Mrs. Loya further submitted documentation she received from the Army listing Mr. Loya's convictions and sentence and stating that Mr. Loya was prohibited from having any contact with her and "with minor children." In contrast, at the hearing on his petition, Mr. Loya presented only argument of counsel and no evidence whatsoever in support of his argument that the contact he requested would be in the best interest of his children.
On appeal, Mr. Loya's arguments mainly rely on affidavits and other documents attached to his appellate brief. However, none of those documents were before the trial court at the time of the hearing and were not considered by the trial court when rendering judgment. Pursuant to La. C.C.P. art. 2164, an appellate court must render judgment upon the record on appeal. The record on appeal is that which is sent by the trial court to the appellate court and includes the pleadings, court minutes, transcript, judgments, and other rulings, unless otherwise designated. La. C.C.P. arts. 2127 and 2128. An appellate court cannot review evidence that is not in the record on appeal and cannot receive new evidence. The appellate briefs of the parties are not a part of the record on appeal, and this Court has no authority to consider facts referred to therein if those facts are not in the record. Examination of exhibits attached to an appellate brief, but not offered into evidence at the trial court, is beyond the scope of appellate review. Distefano v. B & P Const., Inc. , 04-25 (La. App. 5 Cir. 5/26/04), 874 So.2d 407, 411, writ denied , 04-1735 (La. 10/15/04), 883 So.2d 1058. Further, the Louisiana Supreme Court has held that evidence not properly and officially offered and introduced cannot be considered, even if it is physically placed in the record. Denoux v. Vessel Management Services, Inc ., 07-2143 (La. 5/21/08), 983 So.2d 84, 88.
Considering the testimony and evidence presented by Mrs. Loya at the hearing, compared to the lack of evidence presented by Mr. Loya at the hearing, and the *1055 prohibition against our consideration on appeal of the affidavits and other documents attached to Mr. Loya's appellate brief, we find Mr. Loya's first and second assignments of error to be without merit.
Further, although Mr. Loya argues in his third assignment of error that the trial judge should have recused himself from the case because he allegedly was "an old family friend" of Mrs. Loya, Mr. Loya did not file a motion to recuse the trial judge in the trial court prior to rendition of the judgment, as required in La. C.C.P. art. 154, and thus, this issue may not be considered on appeal. See Boone v. Reese , 04-0979 (La. App. 3 Cir. 12/08/04), 889 So.2d 435, 442. Accordingly, this assignment of error is also without merit.[9]
CONCLUSION
For the foregoing reasons, the judgment of the trial court on Mr. Loya's Petition for Contact with Minor Biological Children is affirmed.
AFFIRMED

Previously, in 2012, Mr. Loya filed three motions to re-establish contact with his minor children, all of which were summarily, procedurally denied by the trial court.

Specifically, the trial court ordered Mr. Loya to provide a memorandum of law addressing the statutory or other legal basis for the court to order the requested contact; the statutory or other legal basis for a custody facilitator/parenting coordinator to perform the duties requested; and the statutory or other legal basis allowing the court to communicate with any of the entities listed in the pleadings.

La. C.C. art. 136, entitled "Award of visitation rights," provides, in pertinent part:
A. A parent not granted custody or joint custody of a child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would not be in the best interest of the child.
* * *
C. Under extraordinary circumstances, any other relative, by blood or affinity, or a former stepparent or stepgrandparent may be granted reasonable visitation rights if the court finds that it is in the best interest of the child. Extraordinary circumstances shall include a determination by a court that a parent is abusing a controlled dangerous substance.
D. In determining the best interest of the child under Paragraphs B and C of this Article, the court shall consider:
a. The length and quality of the prior relationship between the child and the relative.
b. Whether the child is in need of guidance, enlightenment, or tutelage which can best be provided by the relative.
c. The preference of the child if he is determined to be of sufficient maturity to express a preference.
d. The willingness of the relative to encourage a close relationship between the child and his parent or parents.
e. The mental and physical health of the child and the relative.
E. In the event of a conflict between this Article and R.S. 9:344, the provisions of the statute shall supersede those of this Article.

La. R.S. 9:351, entitled "Access to records of child," provides:
Notwithstanding any provision of law to the contrary, access to records and information pertaining to a minor child, including but not limited to medical, dental, and school records, shall not be denied to a parent solely because he is not the child's custodial or domiciliary parent.

Although Mr. Loya made this argument in his memorandum, he did not assign as an error or raise as an issue for review in his appellate brief the trial court's failure to provide him with the relief provided for in this statute. Because the appellate court will only consider alleged errors of the trial court that are properly assigned and briefed, we do not address the trial court's failure to grant the relief requested by Mr. Loya in this argument. See Uniform Rules-Courts of Appeal, Rule 2-12.4(A)(5) and (6), respectively, which require the appellant to include in his brief "assignments of alleged errors" and "a listing of issues presented for review." See also Gooding v. Merrigan , 15-200 (La. App. 5 Cir. 11/19/15), 180 So.3d 578, 583.

Being incarcerated, Mr. Loya did not attend the hearing.

Mrs. Loya stated that her objection to Mr. Loya's receiving information such as the children's grades and medical records was "strictly punitive."

In response to the judgment, Mr. Loya filed a motion for a new trial on June 30, 2017. The trial court denied the motion on July 11, 2017, noting that the proper remedy to address Mr. Loya's arguments was on appeal.

We further note that Mr. Loya did not present any argument or evidence in the trial court to support this allegation.